| 199 | 307 |
| 205 | ¹414 |
| 199 | 307 |
| 209 | ¹212 |

## Neafie's Estate.

*Trusts and trustees—Removal of trustee—Act of April 9, 1868, P. L. 785.*

Under the Act of April 9, 1868, P. L. 785, entitled " An act to authorize the court of common pleas and orphans' court in the city of Philadelphia to appoint and remove trustees," the courts have no power to remove a trustee at the mere whim or caprice of a cestui que trust. A substantial reason for such action must appear.

An application by a cestui que trust to have a testamentary trustee removed will not be granted where it appears that the aversion of the petitioner to the trustee arose from the fact of the trustee's appointment to the exclusion of herself and her husband, that an alleged improper sale of assets of the estate was a proper and prudent one, and that the petitioner's annoyance, alleged ill health and expense of employing counsel were all due to her own acts and not to any conduct of the trustee.

Nathan's Estate, 191 Pa. 404, overruled.

Argued March 27, 1901. Appeal, No. 26, Jan. T., 1901, by Mathias Seddinger, trustee, from decree of O. C. Phila. Co., removing trustee, in the Estate of Jacob G. Neafie, deceased. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Petition to remove testamentary trustee.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*John G. Johnson*, with him *Eli Kirk Price*, for appellant.— Under the law the legal title to the personal estate vested absolutely in the executors who had an unqualified and unlimited right to dispose of it by sale or pledge for all purposes connected with the discharge of their duties under the will. It was their duty to realize upon it within a reasonable time and in the best manner practicable to prevent further depreciation : Smith v. Ayer, 101 U. S. 320 ; Petrie v. Clark, 11 S. & R. 377 ; Bayard v. Farmers' & Mechanics' Bank, 52 Pa. 232 ; Wood's Appeal, 92 Pa. 379 ; Johnston's Est., 9 W. & S. 107 ; Charlton's App., 34 Pa. 473 ; Merkel's Est., 131 Pa. 584 ; Woodward's Est., 27 W. N. C. 407.

The decree of the orphans' court settling the account of the

executors is final and conclusive as to all matters contained in it, and cannot be questioned or impeached in collateral proceedings except for want of jurisdiction appearing upon the record, or for fraud: McFadden v. Geddis, 17 S. & R. 336; McLenachan v. Com., 1 Rawle, 357; App v. Dreisbach, 2 Rawle, 287; Thompson v. McGaw, 2 Watts, 161; Clark v. Callaghan, 2 Watts, 259; Brinton's Est., 10 Pa. 408.

The creator of a trust intends that the discretion of the trustee, and not that of the cestui que trust of the court, shall control the execution of the trust; and consequently the court will not interfere at the instance of a cestui que trust without some showing of bad faith or gross mismanagement on the part of the trustee, even when the result of the action prayed for would be to materially benefit the estate of the cestui que trust: Lee v. Young, 2 Y. & Coll. Ch. 532; Bryson v. Wood, 187 Pa. 366; Camden v. Murray, L. R. 16 Ch. Div. 161; Chew v. Chew, 28 Pa. 17; Ingles's Estate, 76 Pa. 430; Vanderveer's Estate, 16 W. N. C. 259; Markle's Estate, 182 Pa. 378; Naglee's Estate, 52 Pa. 154; Williams's App., 73 Pa. 285; Gibbes v. Smith, 2 Rich. Eq. 131; Berry v. Williamson, 11 B. Mon. (Ky.) 245.

The act of 1868 does not contemplate removal without adequate cause: Stevenson's App., 68 Pa. 101; Marsden's Estate, 166 Pa. 213.

*A. H. Wintersteen*, with him *George Tucker Bispham*, for appellee.—On the merits of the case the authorities are equally clear. The grounds on which the petition was based were the destruction of mutual confidence between the appellee and her trustee; her deep-seated objection to the appellant personally and as trustee; the inability on the part of the appellee to consult or confer with him without inconvenience, annoyance and discomfort to her, resulting in the necessity of her having counsel to act for her in conducting the ordinary business of the estate, and an added expense necessarily incident thereto; and a very distinct and definitely established injury to the appellee's health springing from the continuance of the relations. These conditions have been fully established by the testimony, and the case is, therefore, directly within the authority of the well known decisions of Marsden's Estate, 166 Pa. 213, Nathan's Estate, 191 Pa. 404, and Martin's Estate, 4 Pa. Dist Rep. 219.

OPINION BY MR. JUSTICE MESTREZAT, May 13, 1901:

Jacob G. Neafie died January 16, 1898, leaving a will dated December 18, 1891. He named his wife, Mary A. Neafie, and Mathias Seddinger as his executors and trustees. By his will, the testator gave his wife, inter alia, the one third of his residuary personal estate absolutely and the one half of the income from his residuary real estate for her life. He bequeathed the residue of his personal estate to his executors in trust to pay the income thereof to his daughter, Mary E. Whitaker, during life, and devised his residuary real estate to his executors in trust to pay one half of the income to her for life; and upon her death he directed the said residuary estates to be held in trust for the children of his daughter during their lives and at the period of distribution, after the death of the surviving grandchild, to be divided among such of the descendants of his daughter, his sister and his brother as might then be living. The residuary personal estate amounted to $940,746.17, the principal asset of which was 4,421 shares of stock of the Neafie & Levy Ship & Engine Building Company. The testator provided in his will that the interest in his estate given his daughter should not in any manner be subject to the control or interference of her husband, nor liable for the payment of his debts. To carry out the provisions of the will the executors or the survivor of them were authorized to sell all the residuary estate.

On May 23, 1899, Mary A. Neafie was discharged as executrix and trustee on her own petition. Mrs. Mary E. Whitaker, testator's daughter, presented her petition to the orphans' court on July 8, 1899, praying for the appointment of the Girard Trust Company as trustee in place of Mrs. Neafie. This was refused. On November 6, 1899, Mrs. Whitaker presented an amended petition to the court praying, for the reasons therein set forth, that Seddinger be removed from the position as trustee and that the Girard Trust Company be appointed in his place. Mrs. Whitaker's children joined in the amended petition. Seddinger filed an answer denying the material facts alleged as grounds for his removal. All the parties interested in the testator's estate, except Mrs. Whitaker and her children, joined in the answer and requested that the amended petition be dismissed. The court below, on January 2, 1901, granted the prayer of the petition, removed Seddinger and appointed the Girard Trust

Company as his successor in the trust. The correctness of the action of the court is the question for determination here.

The grounds alleged in the petition for the removal of the respondent were: Entire loss of confidence in the trustee arising from his conduct in the management of the estate in his own interest and to the prejudice of the petitioner and without consulting her; dictatorial and arbitrary demeanor, refusing title papers and rendering necessary the employment of private counsel; inability to confer without irritation and annoyance to the petitioner; worriment and distress of mind and injury to health; the necessity of employing some one to advise upon investments in aid of trustee and the increased expenses to petitioner's private estate.

This application was made to the court below under the act of April 9, 1868, P. L. 785, Purd. 2036, which provides as follows: " Where any trust now exists or is hereafter created, the cestui que trusts, or a majority of them having the life estate, shall have the right to elect or choose trustees to execute said trust; and upon petition of the cestuis que trust or parties in interest as aforesaid, having such life estate, the court of common pleas or orphans' court in and for the city of Philadelphia, having jurisdiction, shall remove the acting trustee or trustees, and appoint other or others as chosen or elected by said parties, who shall have all the powers to execute said trusts, upon security being approved and entered by said appointees, as directed by said court appointing them." The title of the act is: " An act to authorize the court of common pleas and orphans' court in the city of Philadelphia to appoint and remove trustees." The first reported case in which the act was construed was Stevenson's Appeal, 68 Pa. 101. In that case a widow with children executed a deed of trust of her estate to her father and another as trustees for her sole and separate use. After her second marriage she and her husband asked the common pleas to discharge the trustees and to permit her to select another. The court dismissed the petition and said, inter alia: " Two constructions may be put upon this law; one would oblige us at the mere whim of a cestui que trust, at any time, to appoint a new trustee of his selection; and the other, to make such an appointment when for any just cause the former trustee has been removed, dies or resigns. . . . Surely

we cannot adopt the first construction, because it could never have been the intention of the legislature to endanger or destroy trusts altogether. . . . The moment a trustee, although exercising a just restraint, does a thing which his cestui que trust does not approve, . . . . he must be removed. . . . The person to be protected, under the supervision of the court, exercises a fatal control over the agent appointed to protect him, and even commands the court." This court adopted the opinion of the court below and affirmed the judgment. In the opinion of this court it was said : " It is impossible to suppose that the legislature intended practically to destroy trusts in the commercial metropolis of the state, where they are created every day by deeds and wills, and to leave them untouched in every other part of this great commonwealth. If the construction contended for by the counsel for the petitioner is correct, what would be the consequences ? Trusts are created to protect and support minor children, weak and feeble minded persons, men and women whose faculties have been weakened by drink or disease, deaf, dumb, blind, and incurably lame and decrepit persons, monomaniacs, partially insane persons and married women, and the trustees invested with the legal estate have been selected at the creation of the trusts for their honesty, integrity and capacity, and then the whole fabric is swept away at the mere whim of the cestui que trust who never was trusted, but was intended to be protected against himself and his utter incapacity to manage his own affairs. The legislature never intended so absurd an act, as to make a minor of tender years or a woman under the influence of her husband, anxious to grasp her property, the sole judge without appeal of who shall manage a trust created for the express purpose of preserving the property intact for the support and maintenance of the cestui que trust."

We think this the correct interpretation of the statute. It carries out the object of the act as expressed in the title. The purpose of the legislature was to authorize the court "to appoint and remove trustees " at the instance of the parties named in the act. There is nothing, however, in the language of the statute which leads to the conclusion that the court was to act without sufficient cause being made to appear. Such an interpretation would produce results not contemplated in the legislative mind and certainly not conducive to the inter-

ests of the trust estate or to the protection of the cestui que trust for whom the trust was created. In construing the act, both these objects should be kept in view and neither should be disregarded. The intention of the testator should be made effective, and his right to dispose of his property in the manner and on the terms expressed in the instrument creating the trust should be observed and enforced. The wisdom of his beneficence and his method of carrying it into execution are questions which he, as owner of the property, should be permitted to determine. His will in the premises must be regarded as law so long as it does not conflict with the organic law of the state and the statutes in conformity therewith. While observing the rights of the party creating the trust, the interests of the cestui que trust should likewise receive consideration and protection. It was for his benefit the trust was created, and it is the duty of the court to see that his rights are not jeopardized by the failure of the trustee to perform the duties imposed upon him. If the confidence reposed in the trustee by the creator of the trust has been abused and the interests of the beneficiary are liable to suffer thereby, the court should act promptly and effectively in affording adequate relief to the cestui que trust. This does not conflict with the right of the creator of the trust to have it executed by the parties he named, as trustee, but it is in aid of the protection of the trust which he has created.

Keeping in view the evident purpose of the legislature to protect the rights of all parties concerned, the construction of the act of 1868 is not difficult. A sound judicial discretion in the enforcement of its provisions will accomplish the object of its enactment. Hence, as held in Stevenson's Appeal, it is the duty of the court to refuse to remove a trustee at the mere whim or caprice of the beneficiary. There should be a substantial reason appearing to the court before it removes the trustee, who enjoyed the confidence of the person who created the trust and who by reason of his fitness for executing it, was empowered to act as trustee. The duties of a trustee are frequently onerous, especially so in large estates, and their performance is sometimes necessarily attended with a disagreement between the trustee and the cestui que trust. When this occurs and the trustee has acted within the authority

imposed upon him by the trust, he should be sustained by the court. He is not to be deprived of his office simply because the cestui que trust would have acted differently and, possibly, more in his own interest than for the protection and success of the trust estate. Nor should lack of confidence in the trustee by the beneficiary without substantial cause or personal demeanor of the trustee towards the cestui que trust, provoked or necessitated by the conduct of the latter, induce the court to place the trust in other hands. Such are not the reasons contemplated by the act of assembly for depriving the owner of property of the right to control its administration.

As any man may be mistaken in his estimate of the integrity and business capacity of another, when the latter becomes the former's trustee and his unfitness for the position appears to the court there should be no hesitancy about his removal. If his management of the trust justly subjects him to criticism and to a lack of confidence by the cestui que trust, he should not be continued in control of the estate. The relation of trustee and cestui que trust is one of confidence, and when either abuses that confidence, he must assume the responsibility. Pleasant personal relations between the parties interested in the trust is desirable and it is a duty incumbent upon each to aid in securing that object.

Some of the decisions subsequent to Stevenson's Appeal, supra, construing the act of 1868 have not been in entire harmony with that case. The departure from the interpretation therein given the act, however, may be more apparent than real, and the facts of the case under consideration may have justified the court's conclusions. Nathan's Estate, 191 Pa. 404, however, we do not regard as following the rule laid down in Stevenson's Appeal for the construction of the act of 1868. It is, in our judgment, a departure from the correct interpretation of the statute and cannot be sustained. We are, therefore, obliged to overrule it.

In the light of the duties of a trustee as thus understood, we will briefly examine the allegations against Mr. Seddinger contained in the petition of Mrs. Whitaker. The loss of confidence arises from the sale of testator's stock in the Ship & Engine Building Company. Mr. Seddinger was a business associate of Mr. Neafie and had made large investments for him. He had

full charge of his private affairs. Immediately prior to his death, the testator had negotiated a sale of the stock to Somers N. Smith at $100 per share with interest at the rate of four per cent per annum on the deferred payments. The death of Mr. Neafie in January, 1898, prevented the consummation of the sale, which was to take place in March or April of that year. On March 28, 1898, Mr. Seddinger and Mrs. Neafie, the trustees, under the advice of counsel, sold to Smith the stock at $100 per share with interest at the rate of five and four tenths per cent per annum on the deferred payments. At that time the stock was not a marketable commodity and was not regarded by the minority interest as worth more than $60.00 per share. Prior to decedent's death, the surplus capital of the company had been reduced and the business was running down. The written contract for the sale of the stock was submitted to Mrs. Whitaker's counsel before the sale. Mrs. Whitaker's objections to the sale were that she wished the stock to remain in the family and that she was not consulted prior to the sale about the propriety of making it. These reasons are not sufficient under the facts of this case to show mismanagement on the part of the trustee, or grounds for loss of confidence in him by Mrs. Whitaker. On the contrary he did what his duty required him to do and what the interests of the estate committed to his care demanded of him. This matter needs no further consideration.

The allegation in the petition of dictatorial and arbitrary demeanor in the conduct of the trustee is not supported by the testimony. It had its foundation in the imagination of the petitioner. The incident of the title papers is trivial and unimportant.

We see nothing in the evidence that would warrant the conclusion that the trustee's conduct or demeanor should cause irritation and annoyance to the petitioner when she had occasion to confer with him. The allegation in the petition to that effect may be true, but the cause is not with the trustee, nor one for which he is responsible.

The petitioner admits she is a delicate woman and her physician testifies that she has a progressive disease. He also testifies that her disease produced nervousness, that "she was annoyed at any surrounding trouble, that is, in regard to the house,

little things about the house worried her." She claims that her feelings toward Mr. Seddinger affect her heath and that it began to suffer through his conduct after the sale of the stock. The testimony of her physician shows, however, that she was displeased with the trustee from the first, and that she mentioned her trouble with Mr. Seddinger to the physician soon after the reading of the will. As we have seen she had no just complaint against the trustee arising out of the sale of the stock, and therefore if it aroused in her unfriendly feelings toward him, affecting her health, Mr. Seddinger is not to be censured for it. It is quite apparent however that the petitioner's aversion to the trustee began as soon as it was known that the testator had placed his estate in the hands of Mr. Seddinger and his cotrustee. It was natural for Mrs. Whitaker to believe that she and her husband should not have been overlooked in this respect by the testator, and her disappointment would provoke her criticism of the administration of the trust by the trustees. She may have permitted herself to be worried over the state of affairs so that it affected her health, but if this be true it must be attributed to her father's action in naming his wife and Mr. Seddinger, his long-time business associate, as his trustees, and not to any act of omission or commission on the part of the trustees, or to their demeanor toward the petitioner.

The only other reason assigned for the dismissal of the trustee is that his continuance in office will necessitate increased expense to the petitioner's private estate by requiring her to communicate with him through counsel. A sufficient reply to this suggestion is that if hostile relations exist between Mrs. Whitaker and the trustee, they are, as we have heretofore seen, of her own creation and not brought about by the conduct or action of the respondent.

The evidence before us fails to show that the petitioner has any substantial grounds for a grievance against the respondent. If any personal annoyance or discomfort arises in her business relations with the trustee, it is to be regretted, but so far as the testimony discloses, he is not responsible for it, and should not be punished by dismissal from his trust.

In addition to Mrs. Whitaker and her children, there are other cestuis que trust whose interests in the estate should not be overlooked. They are satisfied with the management of the

trust estate, and ask the court to refuse the application of the petitioner for the dismissal of the trustee.

Our conclusion requires us to reverse the court below. In doing so, however, it should be said that the decree of that court is supported by the decision in Nathan's Estate.

The decree of the court below is reversed and the petition to remove the trustee is dismissed at the cost of the appellee.