## Kohler Estate.

Argued April 21, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*John E. Flynn,* with him *Frederick B. Smillie,* of *Smillie & Bean,* for appellant.

*E. C. Shapley Highley,* with him *Russell J. Brownback,* for appellee.

*Thomas Stokes,* of *Pepper, Bodine, Stokes & Schoch,* for appellee.

Opinion by Mr. Justice Patterson, September 29, 1943:

This appeal is from the refusal of the court below to surcharge an executrix for the alleged improper investment of the proceeds from a sale of principal real estate.

Martin Luther Kohler died August 20, 1916. By his will his daughter, Ruth K. Bates, appellee, was appointed executrix. She was empowered, but not directed, to convert decedent's real estate and directed to "pay all moneys received by her to The Philadelphia Trust, Safe Deposit and Insurance Company of Philadelphia [now the Fidelity-Philadelphia Trust Company] in trust to invest the same and keep the same invested . . ." A spendthrift trust was created for his two daughters, the executrix and Else Campbell, during their lives. Their issue were the remaindermen. Letters testamentary were issued to appellee on August 25, 1916, and in 1917 a first account was filed, audited and confirmed. The auditing judge awarded $2,629.05 to appellee for the purpose of preserving the unproductive real estate until a sale thereof could be effectuated. A period of twenty years was required for the conversion of all real estate, the last tract being sold in 1937. The estimated cost for maintaining the real estate was $2,000 yearly.

To prevent an unnecessary impairment of principal, appellee, pursuant to advice of counsel, retained and invested a portion of the proceeds received from the sale of real estate. By 1924 the amount so invested was $25,-000. That sum was invested in government securities for the executrix by T. E. Frame, vice-president of The Fidelity-Philadelphia Trust Company. Appellee was advised and urged by the Trust Company to open an agency account, and on October 2, 1924, executed an agency agreement prepared by the company. By this agreement the Trust Company became the agent and attorney-in-fact for the executrix, formally received all securities,

agreed to collect the income, make such investments as she should authorize and "to suggest suitable investments for any principal moneys in hand, without assuming any responsibility for the value or safety of such investments", and was to receive a commission of three per cent on all income collected.

On May 16, 1938, on motion of appellants, Else Campbell, a life tenant, and Dorothy Miller and Robert Campbell, remaindermen, a citation was issued directing the trustee to show cause why an account should not be filed. The trustee thereupon caused a similar citation to be directed to the executrix. On November 4, 1938, twenty-one years after the testator's death, separate accounts were filed by the executrix and the trustee. Only the account of the executrix is here involved. To this account appellants filed exceptions, urging that the investments were improperly made and, in the alternative, that if the executrix had the power to so invest, there had been an unlawful delegation of that power. The trustee was awarded the investments at their face value. Appellants contend that the true value of these investments is far less than their face value and, therefore, they should have been replaced with cash, measured by the present market value, with interest thereon from the date of investment. Exceptions to the adjudication were dismissed and this appeal followed.

The duty of an executor generally is not to retain and invest, but to liquidate and terminate: Restatement, Trusts, section 6. If, however, a valid reason exists for the retention of a fund by the executor, it is incumbent upon him not to permit such fund to remain idle, but to invest it, and if there is a default in this regard he is chargeable with lawful interest thereon : *Henry's Estate,* 341 Pa. 439; *Dick's Estate,* 183 Pa. 647; *Bruner's Appeal,* 57 Pa. 46; *Yundt's Appeal,* 13 Pa. 575. See also *Landis v. Scott,* 32 Pa. 495.

In investing a portion of the principal the executrix acted as a reasonable and prudent person under the circumstances. Counsel was consulted before the reserve

was created, a sum for maintaining the unproductive real estate was awarded to her by the auditing judge when the first account was confirmed, and she endeavored to preserve the principal of the estate. There was a valid reason for the retention of the fund, and all investments were legal investments. Whether her counsel was correct in assuming that the trustee had no power to hold the real estate under the will is a question not here involved. Suffice it to say that she relied upon advice of competent counsel in retaining the fund for investment purposes. "Where a guardian or other fiduciary acts in good faith under advice of a competent lawyer, he is not liable for mistakes of law, if such there be, or for errors of judgment": *Dempster's Estate,* 308 Pa. 153, 158. See also *Riebel's Estate,* 321 Pa. 145, 149; *Henry's Estate,* supra, 447; *Kline's Estate,* 280 Pa. 41, 44.

Having acted properly in making the investments, has the executrix breached her fiduciary duty to the beneficiaries by delegating this power to invest? That the power to invest the funds of an estate is a personal one, to be exercised by the one to whom the testator entrusted such power, is admitted. See Restatement, Trusts, section 171. Appellee relies upon the agency agreement and maintains that, on its face, it cannot be construed to have delegated to the trustee-agent the broad power complained of, for the reason that there has been given only the right to "suggest" suitable investments and the investments were made as agent and only with the principal's consent and at her direction. Appellants contend, however, that the power was in fact delegated.

That a fiduciary may not delegate to another the performance of a duty involving this discretion and judgment is well settled: *Clabby's Estate,* 338 Pa. 305; *Seamans' Estate,* 333 Pa. 358; *Iscovitz's Estate,* 319 Pa. 277; *Bohlen's Estate,* 75 Pa. 304; Restatement, Trusts, section 171 (H). This is true even though the one to whom the power is delegated is a co-fiduciary: *Bohlen's Estate,* supra. That the agency agreement by its terms

delegated no authority to invest must be conceded. If, however, there has been a delegation in fact the Court is not powerless to act. It may, and should, charge the fiduciary with any loss resulting from the breach of his fiduciary duty. Appellee relies upon *Clabby's Estate,* supra. In that case this Court said (p. 315) : "This instrument, on its face, could not have the broad effect attributed to it by the court below. It merely empowered the attorney-in-fact to hold the trust assets for safe-keeping, to collect income and to distribute it under the terms of the will. The agent was given no power over investments, and the actual management of the trust remained at all times in the hands of the trustee . . ." The record before us, however, shows that the agent did not limit itself solely to the exercise of purely ministerial duties. The manner in which the agency agreement operated is the criterion by which the scope and extent of delegated power must be determined.

A delegation of duties, as shown in *Iscovitz's Estate* and *Seamans' Estate,* both supra, does not appear here. In those cases the funds had been turned over to an agent with privileges to invest and manage as the fiduciary should direct. The fiduciaries, however, seem to have believed they were "relieved of the duty of keeping a watchful eye on the situation." Here the executrix maintained constant contact with her agent; she had numerous conversations with Mr. Frame; and, she knew of all transactions and approved them. At the same time she was endeavoring to liquidate the remaining unproductive real estate. What Scott on Trusts (p. 916) says with regard to the delegation of duties in *Bohlen's Estate,* supra, is applicable here : "It was the duty of the [executrix] to exercise [her] own discretion in determining whether the securities should be sold and at what price. The result would be different if [the executrix] had exercised [her] discretion in determining to sell the specific securities and in fixing the price, *or if the sale had been reported to [her] and in the exercise of [her] discretion [she] had ratified it."*

The evidence fails to disclose an improper delegation of discretionary duties, for the breach of which the executrix could be surcharged for loss, if any, occasioned thereby.

The decree of the court below is affirmed. Costs to be paid out of the estate.