## Beichner Estate.

Argued October 9, 1968.  Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Rex Downie, Jr.*, for appellant.

*Peter O. Steege,* with him *Leonard L. Ewing,* and *Ewing, Evans and Steege,* for appellee.

OPINION BY MR. JUSTICE JONES, November 12, 1968:

This appeal challenges the propriety of a decree of the Orphans' Court of Beaver County removing an executrix of an estate and revoking letters testamentary granted to her.

William H. Beichner, a resident of Beaver County, died testate on September 21, 1967. Surviving Beichner were four daughters by a first marriage and Millie Beichner, his wife by a second marriage.

Beichner's will—dated May 29, 1967—provided: first, for payment of debts, last illness and funeral expenses; second, a specific devise of his realty, located at 2103 Eighth Street, Patterson Township, Beaver County, and all furniture therein to Mrs. Beichner;[1] third, the residuary estate is given to Beichner's four daughters; fourth, a direction that all taxes be paid out "of the principal of [his] general estate" as if such taxes were expenses of administration, fifth, the appointment of two of his daughters—Amanda Groom and Joan Larson—as executrices of the estate.

On October 13, 1967, Beichner's will was probated and letters testamentary issued to the named executrices. On May 2, 1968, Mrs. Beichner petitioned the Orphans' Court of Beaver County for the removal of both Mrs. Groom and Mrs. Larson as executrices and the appointment of a corporate administrator in their stead. Her petition averred, inter alia: (a) that the executrices had not filed an inventory or a statement of debts and deductions and had not paid the transfer

---

[1] In Mrs. Beichner's petition for removal, she avers this realty is the principal asset of the estate and that, to her knowledge, the personal assets of the estate, other than life insurance, amount to approximately $1300.

inheritance tax; (b) that the claims against the estate, to petitioner's knowledge, amount to approximately $5500 included in which are estimated fees for the executrices and attorneys of $1297 which it is claimed are excessive; (c) that executrices contracted an excessive funeral bill of $1,938.70; (d) that Beichner had told petitioner that he had a life insurance policy, wherein the named beneficiary was Mrs. Larson, earmarked for payment of funeral expenses which Mrs. Larson had agreed to pay out of the proceeds of the policy but which she now refuses to pay, contending the insurance proceeds were a gift from decedent; (e) that Mrs. Larson, a registered nurse, has presented two claims against the estate, one for $2,470 for private duty nursing plus medication and the other for $100 for injections for the petitioner, which claims "are with the cooperation of" Mrs. Groom; (f) that the executrices have charged petitioner with concealing and disposing of estate assets and have disclosed "a fixed enmity toward her"; (g) that an "unfriendly feeling exists between the [executrices] and [Mrs. Beichner] through no fault of" [the petitioner].

Upon issuance by the court of a citation on the executrices to show cause why they should not be removed from office, Mrs. Groom filed an answer wherein she averred, inter alia: (a) that no inventory had been filed because she had been unable to ascertain from petitioner the whereabouts of certain of Beichner's personal assets and filing of a statement of debts and deductions had been delayed in the hope petitioner would amicably disclose certain personal assets; (b) that the estimated fees for the executrices and attorney were not excessive; (c) that the funeral bill was not excessive and, moreover, petitioner, present when funeral arrangements were made, did not render any objection; (d) that, upon Mrs. Larson presenting

claims against the estate, she was advised her interest was adverse to the estate and Mrs. Larson then agreed to withdraw as executrix, has since employed her own counsel and that her claims will be adjudicated by the court at the time of audit; (e) that she has endeavored to require disclosure by the petitioner of personal assets of Beichner but petitioner has refused to account for the items claimed to be "concealed or disposed of" by petitioner; (f) that she admits "the existence of animosity and ill feeling between the natural children of [Beichner] and their stepmother" but she has attempted to minimize such animosity; (g) that the primary estate problem has been the disposition of the realty and that she had agreed with the Patterson Township Joint School District, under threat of condemnation proceedings, on a price for such realty and to that end has had an executrix' deed prepared which is now in the hands of petitioner's counsel. Mrs. Groom thereafter filed a supplemental answer setting forth that Mrs. Grooms' counsel had now received the executor's deed and an agreement had been concluded providing for handling the proceeds of the real estate sale pending the decree of distribution thereof by the court and that arrangements had now been made for her to enter the premises occupied by petitioner to take an inventory of the personal assets and furniture therein.

While the record does not show that Mrs. Larson, the co-executrix, actually withdrew as a co-executrix of this estate, the fact is that she failed to file an answer to the citation for her removal and has not taken an appeal from the decree directing her removal as an executrix of this estate. Therefore, the propriety of her removal and any conflict of interests on Mrs. Larson's part are not before the Court.

A motion for judgment on the pleadings having been filed by Mrs. Beichner, the court below, *without a hearing and solely on the pleadings*, directed the removal not only of Mrs. Larson but Mrs. Groom. From our reading of the opinion of the court below, the removal of Mrs. Groom was directed simply because of her admission that animosity existed between herself and Mrs. Beichner. In so ruling, we are of the opinion the court committed error.

We start out with the fact that Mr. Beichner, then married and living with the petitioner, in his last will chose his two daughters, Mrs. Groom and Mrs. Larson, as the persons in whom he reposed full trust and confidence for the proper management of his estate and for the fulfillment of his testamentary directions. These personal representatives were not selected by the Register of Wills but by the testator himself. In *Matheus' Estate*, 322 Pa. 358, 185 A. 768 (1936), this Court said: "A testator has, as a property right, the privilege and power to place the management of his estate in a selected person as a condition of his bounty." (p. 359). See also: *Neafie's Estate*, 199 Pa. 307, 310-313, 49 A. 129 (1901); *Glessner's Estate*, 343 Pa. 370, 373, 374, 22 A. 2d 701 (1941); *Corr Estate*, 358 Pa. 591, 598, 599, 58 A. 2d 347 (1948). In this connection, it is well to note that the status of a testamentary executor or trustee is not the same as that of a trustee or administrator appointed by the court. See: *Crawford's Estate*, 340 Pa. 187, 190, 16 A. 2d 521 (1940); *Corr Estate*, supra, 598. A testamentary executor or trustee is one whose choice was made by the person whose estate was to be administered and managed and represents an expression of trust and confidence in the person or persons so selected; an administrator appointed by the Register of Wills represents not the choice of the decedent nor are the person or

persons appointed those in whom, necessarily, the decedent placed trust and confidence.

That an Orphans' Court possesses the power to remove an executor is clear beyond question. See: Fiduciaries Act of April 18, 1949, P. L. 512, art. III, §331, 20 P.S. §320.331. Insofar as presently pertinent, section 331 provides: "The Court shall have exclusive power to remove a personal representative when he— (1) . . . has failed to perform any duty imposed by law; or . . . (5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office." While, under that statutory provision, orphans' courts do have the power of removal of personal representatives and such removal lies largely within the discretion of such courts, an abuse of such discretion renders its exercise subject to appellate review. Cf. *Fraiman Estate,* 408 Pa. 442, 449, 184 A. 2d 494 (1962) and authorities therein cited. Our present inquiry is whether the court below abused its discretion in the removal of Mrs. Groom; our conclusion is that it did.

The removal of a personal representative chosen by the testator is a drastic action which should be undertaken only when the estate within the control of such personal representative is endangered. To justify the removal of a testamentary personal representative the proof of the cause for such removal must be clear. *Glessner's Estate,* 343 Pa. 370, 373, 374, 22 A. 2d 701 (1941). In *Parson's Estate,* 82 Pa. 465, 467 (1876), Mr. Justice (later Chief Justice) SHARSWOOD, speaking for this Court, stated: "It is a . . . stringent and summary process to remove an executor, and it must clearly appear from the evidence that a case was made out under it, and that the discretion of the court was properly exercised. It must clearly appear that the executor is 'wasting or mismanaging the property or

estate under his charge, or that for any reason the interests of the estate or property are likely to be jeopardized by the continuance of such executor.' "

The only cause assigned for Mrs. Groom's removal by the court below was that animosity existed between Mrs. Groom and her stepmother, Mrs. Beichner, such cause being shown only by an admission in the pleadings. Such animosity may have arisen, as it too often and unfortunately does, because Mrs. Beichner was the second wife and Mrs. Groom a daughter of the first wife or it might have arisen through the fault of Mrs. Beichner or Mrs. Groom; nothing of record indicates *why* the animosity existed. Moreover, there is not a scintilla of evidence on this record that indicates that, assuming this animosity to exist, the estate is being mismanaged or wasted or that such animosity has jeopardized the estate or the interest therein of Mrs. Beichner. Animosity *per se,* absent any showing of any adverse effect on the estate or the rights of any beneficiary by reason of such animosity, does not constitute a ground for removal of an executor in whom the testator placed trust and confidence.

The court below, without a hearing and in reliance solely upon a pleaded admission of the existence of "animosity and ill-feeling between" not only Mrs. Groom and Mrs. Beichner but also between all the children of Beichner's first marriage and Mrs. Beichner, removed Mrs. Groom. In reaching such conclusion the court below placed its reliance on *Rafferty Estate,* 377 Pa. 304, 105 A. 2d 147 (1954) and *Wogan's Estate,* 8 Fid. Rep. 116. In *Rafferty,* the executor clearly had interests which conflicted with his fiduciary duties, i.e., personal claims to alleged estate assets, and the animosity between the beneficiaries and the executor was not *per se* the ground for his removal. In *Wogan,* the court found as facts that the executor

had failed to account for a savings account, a stock account and had misrepresented certain doctor bills. Neither *Rafferty* nor *Wogan* are presently apposite.

Unfortunately, the court below removed the executrix solely on a finding of the existence of animosity *per se* without any showing that such animosity had resulted in any loss, present or future, to the estate or the stepmother's interest. We recognize that Mrs. Groom and her co-executrix had failed to file an inventory or a statement of debts and deductions or pay the transfer inheritance tax, failures which Mrs. Groom attempted to account for in her answer to the removal petition. Such failures could have been promptly rectified by action on the part of Mrs. Beichner's counsel had the executrices been cited to file an inventory, etc. For some unexplained reason such remedies were not resorted to.

On this record, absent a showing of any impact on the handling and management of this estate arising from any ill-feeling existing between Mrs. Groom and her stepmother or that Mrs. Beichner's interest in this estate has been jeopardized by such animosity, the court below should not have removed Mrs. Groom.

Decree reversed. Costs on Mrs. Beichner.

Mr. Justice ROBERTS concurred in the result.

Mr. Justice MUSMANNO did not participate in the decision of this case.