LYON, J.,
The residuary legatees under the last will and testament of Rosella C. Fritz are W. Glenn Clawson, J. Merle Clawson, Betty Clawson Cravener and J. Wayne Clawson. They have filed objections to the first and final account of Elvin F. Fritz, the husband of decedent who was appointed executor in her last will and testament.
The objections are to deductions claimed by the accountant for a $3,000 executor’s fee payable to Elvin F. Fritz, a $2,000 attorney’s fee payable to Alvah F. Shumaker, Esq., and several smaller miscellaneous fees payable to the register of wills and the clerk of the *484 orphans’ court which are charges incurred for the filing of the final account.
Decedent, Rosella C. Fritz, died testate on February 14, 1965. Thereafter, attorney Shumaker, who represented the executor, invited the heirs under her last will and testament to attend a meeting in his office on Sunday, May 2, 1965. Elvin F. Fritz is an elderly gentleman who at the time of the meeting did not know the exact valuation of the total estate. However, he was assisted at the meeting by attorney Shumaker who stated that the exact value of all assets in the estate had not as yet been determined but that the assets in the estate might total as much as $300,000, or maybe only $200,000. He told the residuary legatees what specific assets were in the estate, and also indicated that, in addition, there were certain other assets of decedent’s not includable in the estate, most of which were the subject of tentative trusts in their favor. The parties were also informed of the right of Elvin F. Fritz to take against the will as the surviving spouse of decedent.
It cannot be doubted that the residuary legatees fully understood and comprehended the full import of Mr. Shumaker’s estimated valuation of all the assets in the estate even though none were schooled or experienced in business or legal affairs. But because of their unfamiliarity with such matters, it may well have been that the discussion concerning the specific assets in the estate was more confusing than clarifying.
It was in this setting that Elvin F. Fritz stated his belief that the share of the estate going to the residuary legatees under the terms of the will was too great and that his share was insufficient. He then proceeded to offer each of the heirs $20,000, or a total offer of $80,000 to all, for the release of their respective interests in the residuary estate. Attorney Shumaker thereupon said to the heirs that they should not consider the offer until *485 there were definite figures submitted as to what the net distribution in the estate would be or words to that effect. Accordingly, the offer was not then seriously considered by any of the residuary legatees. It is conceded that throughout the entire meeting all parties displayed customary courtesies toward one another and that no pressures were exerted upon the legatees to accept the offer. In fact, all of the parties adjourned to the home of Elvin F. Fritz apparently for a social gathering after the business meeting was concluded.
But after the heirs arrived home, they quickly concluded that Elvin F. Fritz by his offer of $20,000 had attempted to take unfair advantage of them and for this reason protested his continuation as executor of the estate. The matter was amicably resolved and Elvin F. Fritz petitioned the court to resign as executor stating as his reasons: “That in the interest of harmony and to avoid any conflict of interest in the dual capacity as executor and as principal beneficiary of the estate, petitioner herewith resigns as executor and requests the employment of The First National Bank of Lawrence County as administrator d.b.n., c.t.a. subject to the election by the petitioner to táke against the Will. The other beneficiaries by counsel are agreeable to such appointment.” The prayer of the petition was granted on February 3, 1966, when the court appointed The First National Bank of Lawrence County as administrator d.b.n., c.t.a. and directed Elvin F. Fritz to file a final account of his administration of the estate.
Since the relation between Elvin F. Fritz as executor and the residuary legatees was a fiduciary relationship, the standard of conduct required of him in dealing with the legatees was higher than that which would be required of persons who are not in a fiduciary relation. He was under a duty to deal fairly with the *486 heirs and to communicate to them all material facts relevant to the proposed offer of $20,000 which he knew or should have known: Restatement of Trusts, 2d, 170. The detailed information supplied to the heirs by attorney Shumaker as agent for Elvin F. Fritz wholly satisfied this fiduciary obligation of the executor.
Nevertheless, the residuary legatees contend in support of their objections to the final account that the fiduciary duty owed to them by Elvin F. Fritz was breached by his failure to inform them of the exact monetary amount of their expectancy from the estate at the time he made them the offer of $20,000. But the circumstances attending this offer show that the exact valuation of all assets in the estate had not been definitely determined at that time and that, in lieu thereof, the residuary legatees were advised that they should not consider the offer until figures were submitted as to what the net distribution in the estate would be. It is, therefore, plain that the making of the offer was not a clandestine attempt to deal unfairly with the residuary legatees and constituted neither a fraud nor a misrepresentation on the part of Elvin F. Fritz.
Animosity per se between the executor and a beneficiary of an estate, absent any showing of any adverse effect on the estate or the rights of any beneficiary by reason of such animosity, does not constitute a ground for removal of an executor in whom testator placed trust and confidence. A testator has, as a property right, the privilege and power to place the management of his estate in a selected person as a condition of testator’s bounty. The status of a testamentary executor is not the same as that of an administrator appointed by the court. The removal of a personal representative chosen by testator is a drastic action *487 which should be undertaken only when the estate within the control of such personal representative is endangered. To justify the removal of a testamentary personal representative, the proof of the cause for such removal must be clear: Beichner Estate, 432 Pa. 150, 247 A.2d 779 (1968). There is not a scintilla of evidence on the record that indicates that, assuming animosity existed between the residuary legatees and the executor, the estate was being mismanaged or wasted or that such animosity had jeopardized the estate or the interests therein of the residuary heirs. The decisions of the Pennsylvania Supreme Court in Beichner Estate, supra, and Landis Trust, 382 Pa. 486, 115 A.2d 167 (1955), demonstrate that the residuary legatees had no legal grQund for involuntary removal of Elvin F. Fritz as executor.
It is, therefore, plain that he voluntarily resigned as executor at the request of the residuary legatees only in the interest of promoting harmony among the heirs of the estate as was stated in his petition of resignation. The additional fees to the estate incurred by reason of the executor’s resignation are not claimed by the objectants to be excessive, and because the resignation took place at their insistence and' because of their actions, they cannot now complain about the deductions claimed in the final account for fees paid to the clerk of the orphans’ court and the register of wills when it appears that these expenses were necessarily incurred in satisfying their insistent demand that Elvin F. Fritz resign as executor.
While there is much to be said for the contention of the residuary legatees that the attitude of Elvin F. Fritz at the meeting was one of concern for his own interests rather than those of the other heirs, we are not prepared to rule that he is not entitled to reasonable executor’s fees. In Landis Trust, supra, the *488 court found that the fiduciary in that case, like Elvin F. Fritz in the present case, was not guilty of any fraud or bad faith in the management of the trust. Unlike the executor in the present case, the fiduciary was surcharged in that case because of mistakes, errors of judgment and misinterpretations of the agreement. Nevertheless, the court held that payment of full executor’s fees as well as attorney’s fees was wholly proper under the circumstances, since there was no fraud or misrepresentation or intentional mismanagement of the estate. Substantially the same result was arrived at in Jones Estate, 400 Pa. 545, 162 A.2d 408 (1960), where the court approved payment of reasonable fees to the executor and his counsel even though the executor was subjected to several surcharges by reason of inexcusable negligence, mismanagement of the estate and self-dealing. In the light of the foregoing citations of authority, it would be unfair not to allow payment of reasonable compensation to both the executor and the attorney for the estate for services rendered by them to the estate before the resignation of Elvin F. Fritz as executor.
ORDER
Now, February 19, 1970, all the objections to the first and final account of Elvin F. Fritz, executor of the Estate of Rosella C. Fritz, are hereby severally dismissed.