## Quinlan Estate.

Argued May 5, 1970. Before JONES, COHEN, EAGEN, ROBERTS and POMEROY, JJ.

reargument refused February 12, 1971.

*Kalman I. Nulman,* of the New York Bar, with him *John E. Marx, Michael A. O'Pake,* and *Marx, Ruth, Binder & Stallone,* for appellants.

*Mark C. McQuillen,* with him *John W. Biehl,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 7, 1971:

We are here called upon to determine whether the Orphans' Court of Berks County erred in refusing to remove one executor, the Right Reverend Monsignor Theodore Wagner, or abused its discretion in removing another executor, William L. Quinlan, Jr., on grounds of insolvency and general lack of concern for the estate. We affirm the decree of the orphans' court.

Anna M. Quinlan died testate on November 19, 1965, naming as co-executors of her estate William L. Quinlan, Jr., her son, the Right Reverend Monsignor Theodore Wagner, and John H. Tucker, a business associate. The major asset of the estate was, and is, the controlling interest in the stocks of the Quinlan Pretzel Company and the Reading Pretzel Machinery Company.

Mr. Tucker, who was for many years intimately associated with the Quinlan companies, continued to operate the businesses until his death in February of 1969. Following his death, disagreements arose between the remaining co-executors as to the proper disposition of the Quinlan companies, which the estate was seeking to sell. This dispute has culminated in a petition by Monsignor Wagner to remove Mr. Quinlan, and a cross petition by Mr. Quinlan to remove Monsignor Wagner. The orphans' court granted Monsignor Wagner's petition, but denied Mr. Quinlan's, and Mr. Quinlan has taken this appeal.

By statute, the orphans' court has the "exclusive power to remove a personal representative." Fiduciaries Act of 1949, P. L. 512, art. III, §331, 20 P.S. §320.331. Some of the enumerated reasons in Section 331 for removal are when the personal representative is "wasting or mismanaging the estate, is or is likely to become insolvent or has failed to perform any duty imposed by law; or . . . when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office."*

The nature of our task in reviewing these situations was set out in *Beichner Estate*, 432 Pa. 150, 247 A. 2d 779 (1968): "While, under that statutory provision, [Section 331] orphans' courts do have the power of removal of personal representatives and such removal lies largely within the discretion of such courts, an abuse of such discretion renders its exercise subject to appellate review. . . . Our present inquiry is whether the court below abused its discretion . . . ." Id. at 156, 247 A. 2d at 782 (citation omitted).

In our review we are mindful of well settled principles in this area. An executor, of course, is chosen

---

* Fiduciaries Act of 1949, P. L. 512, art. III, §331, 20 P.S. §320.331(1), (5).

by the testator himself, and his appointment "represents an expression of trust and confidence" by the testator. *Beichner Estate,* supra, at 155, 247 A. 2d at 781. Hence his removal "is a drastic action which should be undertaken only when the estate within the control of such personal representative is endangered. To justify the removal of a testamentary personal representative the proof of the cause for such removal must be clear." Id. at 156, 247 A. 2d at 782. Accord *DiMarco Estate,* 435 Pa. 428, 437, 257 A. 2d 849, 853 (1969); *Fraiman Estate,* 408 Pa. 442, 449, 184 A. 2d 494, 497 (1962) (citing cases); *Parsons's Estate,* 82 Pa. 465, 467 (1876).

Mr. Quinlan asserts that Monsignor Wagner should be removed because he has improperly delegated his powers as an executor, thus violating his fiduciary duties. It appears from the evidence that in 1966 the Monsignor executed a power of attorney in favor of the American Bank and Trust Company of Pennsylvania. Although this power specifically authorized the performance of only ministerial duties, the orphans' court found, and the record clearly indicates, that the Monsignor permitted the Bank to exercise on his behalf practically all of the duties and functions of an executor, including decisions and negotiations concerning the proper disposition of the Quinlan companies.

This delegation is, of course, improper. "That a fiduciary may not delegate to another the performance of a duty involving this discretion and judgment is well settled: Clabby's Estate, 338 Pa. 305; Seamans' Estate, 333 Pa. 358; Iscovitz's Estate, 319 Pa. 277; Bohlen's Estate, 75 Pa. 304." *Kohler Estate,* 348 Pa. 55, 58, 33 A. 2d 920, 922 (1943). See Restatement of Trusts 2d, §171. Indeed, the problems which may be caused unnecessarily by such delegation are evident in this case. The American Bank, acting as attorney-in-

fact for the Monsignor, is also vigorously attempting to convince the directors of the Quinlan companies to sell their stock to the Helme Company, a competing pretzel concern whose chief executive officer, and substantial shareholder, is Arthur McGonigle. Mr. McGonigle, however, is also a director of the American Bank. Thus the Monsignor has not only improperly delegated his authority to an agent not selected by the testator, he has also delegated it to an agent with an apparent conflict of interest. Compare *Rafferty Estate,* 377 Pa. 304, 105 A. 2d 147 (1954) (holding that an executor with an interest in conflict with the estate may be removed) (citing cases).

The orphans' court, however, decided against removing the Monsignor. After noting that the Monsignor's delegation was improper, the court stated that the Monsignor "apparently acted in good faith under the advice of counsel" to the effect that his delegation—and his nonparticipation in the affairs of the estate—were proper. While the orphans' court admonished the Monsignor to perform his duties in the future, the court permitted the Monsignor to remain as an executor.

As we noted, the decision to remove an executor is a "drastic action." The court found that the Monsignor's good faith delegation did not harm the estate; in fact, the estate has not yet been successful in selling the Quinlan companies. Presumably the Monsignor, under the force of the chancellor's admonition, will now take the required interest in the affairs of the estate, and properly carry out his duties as an executor. The decision to remove being so drastic, we cannot say that in the circumstances of this case the court's decision to retain the Monsignor constituted an abuse of discretion.

The orphans' court did, however, order Mr. Quinlan removed for two reasons: (a) his general lack of con-

cern toward the estate was likely to jeopardize the interests of the estate were he allowed to continue as executor; (b) he was insolvent.

As examples of Mr. Quinlan's lack of interest the court cited the fact that Mr. Quinlan was "unavailable" to sign the inventory of the assets of the estate, or the tax returns, that the bank account of the estate does not include his name as one of the executors, and that he was unfamiliar with the development of the offers to purchase the Quinlan companies, since such offers were developed in his absence from the Commonwealth.

The record, however, does not support the court's finding that Mr. Quinlan has lost interest in the estate. While Mr. Quinlan is not a Pennsylvania resident, and has not been since at least the date of his mother's death, that, of course, does not disqualify him from being an executor. In fact, it appears that his nonresidence has had very little effect on the performance of his duties. He has been a director of both companies, has participated in their affairs, and has attended their meetings.

The examples given by the court to show Mr. Quinlan's lack of interest do not support this charge. For example, the forms which he did not sign were never sent to him for his signature. J. J. Ertel, a Vice President and Trust Officer of the American Bank, testified that he and Mr. Tucker, the other co-executor, thought Mr. Quinlan's signature not necessary, and therefore sent him only a conformed copy of the papers. As for the estate's bank account, Mr. Quinlan testified that he believed there was one, but that the American Bank had always handled it and "Mr. Ertel took all of that burden off my shoulders." And as for the offers to sell, while Mr. Quinlan was out of town when two of the offers were developed, he did take quite an active

part in the attempt to sell the Quinlan companies. For example, he personally contacted prospective purchasers, such as Libby, McNeill & Libby, the Nestle Company, and the W. R. Grace Company, and met on several occasions with them. Further, he participated vigorously in the debate over the two main offers, one from Helme and the other from the Ward Company. Indeed, it was apparently his hesitation in accepting the Helme offer without a guaranteed floor price that helped provoke these proceedings.

However, the orphans' court based its removal of Mr. Quinlan alternatively on his insolvency. Our review of the record reveals uncontradicted testimony that Mr. Quinlan had debts of $491,236.00 which he was not able to pay. For this reason, and because Mr. Quinlan's interests in the estate have been attached or assigned, the action of the orphans' court in removing him was not an abuse of discretion.

The decree of the Orphans' Court Division of the Court of Common Pleas of Berks County is affirmed. Each party to pay own costs.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.