410 A.2d 770

In re ESTATE and Testamentary Trust of James Lyon HAMILL, II, Late of Highland Township, Chester County, Pennsylvania, Deceased.

Appeal of Grace L. HAMILL, Income Beneficiary.

Supreme Court of Pennsylvania.

Argued Oct. 10, 1979.
Decided March 20, 1980.

T. Dean Lower, Hollidaysburg, for appellant.

George W. McKeag, Swarthmore, for appellee, Sarah R. Litchfield.

Thomas G. Ashton, Franklin L. Gordon, Coatesville, for appellee, Industrial Valley Bank and Trust Company.

Robert J. Dixon, Deputy Atty. Gen., for appellee, Attorney General, as parens patriae.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Grace L. Hamill is the widow of decedent, James Lyon Hamill II, and the life income beneficiary of a testamentary trust decedent created. Appellant primarily contends that appellee Industrial Valley Bank and Trust Company (IVB), executor of decedent's estate and trustee, acted improperly in its management of the trust and the administration of the estate. Appellant seeks the removal and surcharge of IVB because appellant is dissatisfied with the amount of income produced by the trust. Appellant also contends that IVB, as executor, failed to fund the trust promptly, and, as trustee, failed to place the trust assets in investments providing a greater return. The Court of Com-

mon Pleas of Chester County, Orphans' Court Division held that, on the basis of the evidence presented, appellant failed to demonstrate her entitlement to the relief requested. The record supports the adjudication of the orphans' court and appellant here demonstrates no basis for disturbing that decree. Accordingly, we affirm.

I

Decedent, a resident of Chester County, died on April 24, 1975. By his will decedent appointed IVB executor of the estate, trustee of the trust created, and guardian of any minor beneficiaries of the trust. The will also provided for several specific bequests and granted appellant a life estate in a farmhouse and some household goods.

The residue of decedent's estate was placed in the testamentary trust. Decedent directed that the trustee pay the net income from the trust to appellant, until her death or remarriage, and then to pay the principal to decedent's then living issue. In addition, decedent authorized the trustee to invade principal "as the trustee may from time to time think desirable for the welfare, comfort, and support" of appellant.[1]

IVB, as executor, was granted letters testamentary on May 5, 1975, and began the administration of the estate. Within a few months IVB sold all of the securities held by decedent and invested the proceeds, approximately $480,000, in short term Treasury bills and corporate commercial demand or short term notes. Proceeds from the sale of the real estate ($225,000) were similarly invested. Thus at all times the assets of the decedent's estate were producing income. These liquid investments were selected by IVB in anticipation of the payment of estate obligations which included, inter alia, anticipated federal income tax liability

1. Decedent bequeathed certain specific items of furniture to the issue of his children by his previous marriage. He also made specific pecuniary bequests of $5,000 to each of his three stepchildren (the children of appellant by her previous marriage). Appellant was granted a specific pecuniary bequest of $10,000 in addition to her life interests in the farmhouse and the trust income.

resulting from decedent's apparent failure to have filed returns or pay federal income taxes since 1943.

On October 15, 1975, appellant's attorney sent IVB the first in a series of letters recommending that IVB follow appellant's instructions with respect to the administration of the estate. The letters also sought to have IVB follow appellant's advice on investment policy for the trust assets. In these letters appellant contended that the testamentary trust should be funded immediately and trust assets should be invested only in high interest, income producing long-term U.S. Treasury notes or high quality industrial bonds. Shortly thereafter IVB partially funded the trust by investing $180,000 in an "Income" fund and $120,000 in a "Stock" fund operated by IVB as a fiduciary of trust funds.[2] IVB retained the remaining estate assets in the previously described short term investments. Upon learning of this in-

2. The "Income" fund and "Stock" fund investments IVB selected were legal investment for trusts. See 20 Pa.C.S. § 7134.

In 1976, the "Income" fund consisted of corporate bonds yielding on the average approximately 8%. A small percentage of the fund (4.8%) consisted of "Loans and Real Estate Mortgages," "Preferred Stock," "Convertible Preferred Stock," "Common Stock" and "Cash." The yield on this portion of the fund was just above 6%. Overall the "Income" fund yielded a 7.9% return on assets of approximately ten million dollars.

The "Stock" fund included some "U.S. Government Bonds," "Convertible Bonds" and some "Commercial Paper," but the majority of assets were various common stocks. This fund yielded income of 2.7% on assets totalling approximately six and one-half million dollars. IVB's decision to invest the Hamill trust assets in these funds produced slightly more than a 6% return for the income beneficiary.

Although appellant intimates that IVB improperly placed trust assets in its "Income" and "Stock" fund, the record supports a conclusion that these funds were selected because IVB, for administrative reasons, preferred to manage its trust accounts by combining the accounts in these funds. Thus, the orphans' court properly found no impropriety in the selection of these investments.

We note that appellant contests the testamentary appointment of IVB as both trustee of the testamentary trust and guardian of any minor beneficiaries of the trust. Appellant, however, has presented no evidence to support this claim of impropriety. Because appellant has failed to show that this appointment of IVB as guardian has prejudiced her in any way, we decline to disturb the testator's explicit direction that IVB act in both capacities.

vestment of the estate assets, appellant's counsel again wrote IVB to express appellant's disapproval of this investment policy and to again request only investments which would provide appellant greater income.

On August 3, 1976, after several more letters to IVB, appellant filed a "Petition to Remove and Surcharge" IVB both as executor of the estate and as trustee of the testamentary trust. By this petition appellant also requested that IVB file an accounting. In its answer, IVB appended a proposed first and partial account. On September 30, 1976, a hearing on this petition was held. Thereafter IVB filed the account for audit. Appellant responded with twenty objections to the account and the orphans' court scheduled an audit hearing, which was held on December 23, 1976. On April 14, 1977, the orphans' court decided both matters, denying appellant's petition to remove and surcharge IVB and confirming the executor's first and partial account. Appellant filed twenty exceptions to the confirmation of the account which were denied by the court. Following the denial of appellant's "Petition for Hearing for Argument Before the Full Panel of Judges," appellant took this appeal.[3]

## II

Appellant challenges the orphans' court's refusal to remove or surcharge IVB.[4] We begin with the established

---

**3.** Appellant contends that the orphans' court erred in striking as improvidently filed her exceptions to the "Opinion and Final Decree Sur Petition to Remove Executor/Trustee." On this appeal appellant presents the arguments she presented in her "Exceptions." Since this Court has considered appellant's arguments, she has not been prejudiced by the orphans' court's striking of her exceptions.

**4.** Appellant bases her claim for removal of the executor on the following statutorily provided grounds,

"The court shall have exclusive power to remove a personal representative when he:

(1) is wasting or mismanaging the estate, or is likely to become insolvent, or has failed to perform any duty imposed by law; or

. . . . .

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office."

20 Pa.C.S.A. § 3182.

rule that on appeal we may not disturb the orphans' court's refusal to remove or surcharge unless we find an error of law or an abuse of discretion. *Quinlan Estate*, 441 Pa. 266, 273 A.2d 340 (1971); *In re Fraiman's Estate*, 408 Pa. 442, 184 A.2d 494 (1962). Moreover, the decision of an orphans' court to remove or surcharge "is a drastic action, which should only be taken when the estate is actually endangered," see *Corr Estate*, 358 Pa. 591, 58 A.2d 347 (1948); *Mathues's Estate*, 322 Pa. 358, 185 A. 768 (1936), particularly when the trustee has been selected by the testator. *Quinlan Estate*, 441 Pa. 266, 273 A.2d 340 (1971); *Beichner Estate*, 432 Pa. 150, 247 A.2d 779 (1968); *Bailey's Estate*, 306 Pa. 334, 159 A. 549 (1932); *Neafie's Estate*, 199 Pa. 307, 49 A. 129 (1901). See generally, II Casner, Estate Planning 2263 (Supp.1978).

█ In light of these considerations, on this record we cannot say that the orphans' court committed either an error of law or an abuse of discretion in refusing to remove or surcharge IVB. Appellant's view is that IVB was under an absolute duty to maximize current trust income for appellant's benefit. This position, however, overlooks IVB's obligation to deal impartially with all beneficiaries. See Restatement (Second) of Trusts § 232 (1959) (Impartiality between successive beneficiaries). Professor Scott explains that the trustee

"is under a duty to the [life income] beneficiary to take care not merely to preserve the trust property but to make it productive so that a reasonable income will be available for [the life income beneficiary]. He is under a duty to the [successive] beneficiary to take care to preserve the principal of the trust property for [the successive beneficiary]. He is not under a duty to the beneficiary entitled to the income to risk the safety of the principal in order to produce a larger income, but he is under a duty to him not to sacrifice income for the purpose of increasing the value of the principal."

III Scott, Law of Trusts 1895, § 232 (3d ed. 1967). See also, Restatement (Second) of Trusts § 183 (1959) (Duty to deal

impartially where trust has two or more beneficiaries); *Neafie's Estate*, 325 Pa. 561, 191 A. 56 (1937); *Thompson's Estate*, 262 Pa. 278, 105 A. 273 (1918). A trustee may exercise discretion in preserving the balance between successive beneficiaries. *In re Estate of Weiss*, 454 Pa. 114, 126, 309 A.2d 793, 799 (1973). "The beneficiary entitled to income cannot insist that the trustee should invest in securities yielding the highest rate obtainable from proper trust investments. . . ." III Scott, Law of Trusts 1896, § 292 (3d ed. 1967).

The income generated by the "Stock" and "Income" funds was slightly greater than 6% per annum. Although unsatisfactory to appellant, this rate of interest is reasonable. There is no reason for this Court to disturb the orphans' court's conclusion that the return was a reasonable one.[5] See *Estate of Otteni*, 486 Pa. 631, 406 A.2d 1379 (1979); *In re Estate of Garges*, 474 Pa. 237, 378 A.2d 307 (1977); *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585 (1975).

Although appellant objects to the management of the trust because IVB did not consult appellant before selecting investment alternatives, or accept appellant's advice or suggestions concerning specific investments, this objection is without merit. This Court has already dismissed as "meritless" the argument that a fiduciary improperly failed to consult beneficiaries regarding investment policy. See *In re Estate of Killey*, 457 Pa. 474, 478, 326 A.2d 372, 375 (1974). It is obvious that here the orphans' court properly found that IVB successfully struck a fair balance between the apparently conflicting interests of both the current income beneficiary and the remaindermen.[6]

5. Appellant contends that other trustee's rates of return on trust property are not proper considerations for this Court when determining the propriety of the return in this case. This contention is absolutely without merit. Scott, Law of Trusts 1408–15, § 174 (3d ed. 1967).

6. In support of her proposition that a trustee must maximize current income, appellant cites language in *Wood's Estate*, 130 Pa.Super. 397, 197 A. 638 (1938), to the effect that a trustee has a duty to obtain "as large a return as is consistent with the safety of the

■ Appellant claims that the record evinces an animosity on the part of the trustee toward appellant. While it is true that a fiduciary's antagonism will occasion removal, see e. g., *In re Holmes Trust*, 392 Pa. 17, 139 A.2d 548 (1958); *Hodgson's Estate*, 342 Pa. 250, 20 A.2d 294 (1941); see also, II Scott, Law of Trusts 845, § 197 (3d ed. 1967), there is no level of antagonism here which would justify this relief. The orphans' court specifically found that "[t]he real and only evidence of friction or disagreement between [appellant] and the Bank in the instant case lies in the former's insistent demands . . . for particular types of investments, and the Bank's refusal to abide by such demands." The record supports the orphans' court conclusion that there was no animosity on the part of IVB, and we may not disturb that determination. "[I]n reviewing the decision of the orphans' court, our task is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence." *Cohen Will*, 445 Pa. 549, 550, 284 A.2d 754, 755 (1971); *Holtz Will*, 422 Pa. 540, 544, 222 A.2d 885, 888 (1966); *Hunter Will*, 416 Pa. 127, 136, 205 A.2d 97, 103 (1964).

■ Appellant also alleges that IVB delayed resolution of the so-called "income tax problem" and thus, it is claimed, funding of the trust was improperly delayed for two and one-half years. Appellant contends that had the trustee accepted appellant's calculations of decedent's income tax liability and appellant's proposals for filing the delinquent tax returns, the issue of tax liability could have been resolved without delay. However, appellant's argument is without record support and is rejected here as it was properly rejected in the orphans' court. Moreover, there is no indication that appellant's proposals would have been accept-

principal." But this "generalization" expressed in *Wood's Estate* in no way mandates that the fiduciary disregard the remainder interests. Indeed, within the same passage, *Wood's Estate* observes that a "primary thought of the trustee should be the preservation of the estate from loss."

able to the Internal Revenue Service in these factual circumstances where for thirty years there possibly has been no filing or payment of income tax.

The record reveals that IVB initially wrote the Internal Revenue Service to inquire about the possibility that decedent reported his income without keeping a personal record of his tax returns. After receiving confirmation that the IRS was unable to locate any recent returns for decedent, IVB began to prepare tax returns for the most recent years preceding decedent's death. Those returns were based upon estimates of decedent's income. On the basis of this record, the orphans' court concluded that while IVB could "have moved more expeditiously in filing these tentative returns which it has now belatedly filed, it does not appear that even if it had done so, the ultimate problem would have yet been resolved or that there was any other or additional move which it could have made toward that end." Because the executor was unable to ascertain the decedent's income tax liability over the years, the orphans' court held that IVB's retention of some estate assets in liquid, short-term investments was necessary and proper to meet the anticipated tax liability. We agree with the orphans' court that the decision to maintain liquidity to meet this potential tax claim against the estate was not an abuse of discretion by IVB.

Appellant suggests without any support in the record that the potential tax liability was not as extensive as IVB believed. It was appellant's view that the IRS could not impose liability for failure to pay income taxes beyond the six or seven year period during which, appellant asserts, the IRS keeps taxpayer records. It merits note that appellant's view is contrary to the Internal Revenue Code and Treasury regulations, dealing with the tolling of the statute of limitations when a taxpayer fails to file a return. See I.R.C. § 6501(c)(3); Treas.Reg. § 301.6501(c)–1(c) (1967).[7]

**7.** Appellant challenges IVB's failure to sell decedent's collection of "Duck Stamp Prints," a non-income producing assets. The record establishes and the court found that IVB continually attempted to find a buyer for the prints and obtain a reasonable price from the

Finding no error law or abuse of discretion, nor any basis for disturbing the decrees of the orphans' court, its adjudications must be affirmed.

Decrees affirmed. Each party to pay own costs.

MANDERINO, J., did not participate in the consideration or decision of this case.

LARSEN, J., concurs in the result.

sale. Thus appellant's claim must be rejected. See Restatement (Second) of Trusts § 181 (1959); II Scott, Law of Trusts 1463–66, § 181 (3d ed. 1967).

Appellant also contests the trustee's expenditures regarding insurance for the prints. Such action is clearly within the trustee's discretion in discharging its duty to protect trust assets from destruction. See Restatement (Second) of Trusts § 176 (1959); 20 Pa.C.S. § 3313; see also 20 Pa.C.S. § 7133.