409 A.2d 16

**In re C. A. W., a Minor.**

**Appeal of Joseph C. WEIDMANN.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1979.

Decided Dec. 21, 1979.

Joanne Ross Wilder, Wilder & Miller, P.C., Pittsburgh, for appellant.

Alexander J. Jaffurs, County Sol., James A. Esler, Cheryl Allen Craig, Asst. County Sols., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This is an appeal from a decree of the Orphans' Court Division of the Court of Common Pleas of Allegheny County, granting a petition filed by appellee, Child Welfare Services of Allegheny County,[1] terminating involuntarily the parental rights of appellant, Joseph C. Weidmann, in his minor child, C.A.W. Following entry of the decree nisi appellant filed exceptions, which were denied. The court entered a final decree terminating the parental rights of appellant, and this appeal followed.

The facts are as follows. Appellant and Joanne Mae Weidmann (now Novosedliak) were married on April 18, 1966. During their marriage, two children were born, Pamela Jean Weidmann and C.A.W., the minor subject of these proceedings.

The couple and their children lived together in St. Petersburg, Florida, until 1969, when appellant was convicted of a crime and sentenced to a period of incarceration in the Florida State Penal System. At that time, his wife and the two children returned to the Pittsburgh area. While incarcerated, appellant apparently wrote to his wife's relatives, attempting to learn the whereabouts of his wife and children. His wife informed appellant by letter that she had told the children he was dead.

In March of 1972, appellant's wife began an action in divorce. Appellant originally retained counsel to contest the

1. This agency is now designated as Children and Youth Services.

action, but he withdrew his objections and the divorce became final on January 30, 1973. His former wife then remarried in February of 1973.

In August of 1976, C.A.W. was placed under the care of Child Welfare pursuant to a voluntary entrustment agreement signed by the mother, who told agency workers she had no idea of how to contact appellant. On January 19, March 1 and April 12, 1978, hearings were held in the Juvenile Section of the Family Division of the Court of Common Pleas of Allegheny County, after which the court entered an order adjudicating C.A.W. a dependent child and directing Child Welfare to place C.A.W. in an adoptive home.

On April 18, 1978, Child Welfare filed a petition seeking an involuntary termination of appellant's parental rights in C.A.W. The Allegheny County Law Department, pursuant to being given a Florida address by the lawyer who represented the mother in the divorce proceedings, sent a letter to appellant notifying him of the involuntary termination proceedings. Upon receipt of the letter, appellant contacted Child Welfare and informed agency personnel he would contest the petition. At the time, appellant gave the agency the names of various individuals with whom he had allegedly been in contact in attempts to discover the whereabouts of C.A.W. so that he could have performed his parental duties and obligations. Appellant filed a habeas corpus petition alleging appellee was unlawfully detaining his child. A hearing on both the involuntary termination petition and the habeas corpus petition was held on July 12, 1978. At the hearing, appellant testified he had been consistently thwarted, by friends and relatives of his ex-wife, in attempts to locate both his ex-wife and daughter. He further testified he was unable to locate his ex-wife because he was unable to discover her married name. He also testified his family had sent checks to friends and relatives of his former wife for C.A.W.'s benefit, but allegedly none of the checks had been cashed.

The agency called as witnesses those people with whom appellant had allegedly communicated. While these wit-

nesses testified appellant had occasionally called to ask how his children were, he had never asked the address where they could be located. Further, none of these witnesses had received any calls from appellant in the three years immediately preceding the filing of the termination petition. Further, none of these witnesses received any checks, gifts or correspondence for C.A.W. Appellant's former wife also testified that shortly after her remarriage, appellant called her at the home of her new husband, but upon recognizing his voice, she hung up. She further testified that neither she nor her new husband had any other contact with or correspondence from appellant.

Following the hearing, the court entered a decree nisi, finding appellant had failed to perform parental duties for the six months prior to filing of the termination petition, and further found appellant had not made adequate attempts to perform those duties. This being the case, the court ordered the termination of appellant's parental rights in C.A.W.[2] Following dismissal of appellant's exceptions, a final decree was entered and this appeal followed.

Appellant first argues the court below erred in failing to act upon his petition for writ of habeas corpus. We disagree.

Appellant's petition was based upon the fact Child Welfare obtained custody of C.A.W. pursuant to the voluntary entrustment agreement signed by the child's mother without prior notice being given to him. In *Friedman v. Friedman*, 224 Pa.Super. 530, 307 A.2d 292 (1973), the court held a habeas corpus petition can be utilized only by a person claiming the right to custody of the person alleged to be illegally restrained. Since the action to involuntarily terminate appellant's parental rights in C.A.W. would be dispositive of appellant's right to custody in C.A.W., the court properly defrayed decision of the habeas corpus petition until deciding whether to terminate appellant's parental rights. Further, after deciding appellant's parental rights should be terminated, there was no need for the court to act

2. The court took no action on appellant's habeas corpus petition.

upon the habeas corpus petition, as appellant no longer had standing to press his claim.

■ Appellant next argues the evidence presented at the hearing was insufficient to establish he had failed to perform parental duties for a six-month period prior to the filing of the involuntary termination petition. As we stated:

"Findings of the orphans' court supported by evidence of record are entitled to the same weight given a jury verdict and must be sustained unless the court abused its discretion or committed an error of law." *In re William L.*, 477 Pa. 322, 340, 383 A.2d 1228, 1237 (1978).

Further, all conflicts in testimony must be resolved by the hearing judge, who is the sole arbitrator of credibility. *Adoption of S. H.*, 476 Pa. 608, 383 A.2d 529 (1978).

■ In the instant case, even appellant admits that prior to the filing of the involuntary termination petition, he failed to actually perform any parental duties. The adoption Act provides:

"The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312, and a hearing held pursuant to section 313, on the ground that:

"(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties . . . ." Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311, 1 P.S. § 311. (Supp.1979–80). (Footnotes omitted.)

Appellant attempts to excuse the failure by showing that despite all reasonable efforts required by the Adoption Act, he was unable to locate C.A.W. In an attempt to prove such reasonable efforts, appellant gave Child Welfare the names of individuals through whom he attempted to establish contact with C.A.W. These individuals testified appellant had talked to them very infrequently and none had taken any calls from appellant in the three years immediately prior to the filing of the involuntary termination petition.

Appellant, of course, testified that he frequently attempted to locate C.A.W., but the trial court chose to decide the credibility issue adverse to appellant. On another issue concerning credibility, appellant testified he was unable to locate his ex-wife's new married name, but she testified that shortly after her remarriage, she received a phone call at her new home from appellant. Again, the court chose to disbelieve appellant. The hearing court, as sole judge of credibility, chose to believe witnesses whose competent testimony indicated appellant had not made reasonable efforts to locate C.A.W. As appellant admitted he did not perform any parental duties and was unable to convince the court of a valid excuse for not doing so, sufficient evidence existed to justify termination of appellant's parental rights under that portion of § 311(1) of the Adoption Act concerning failure to perform parental duties for a six-month period.[3]

Decree affirmed. Each party to bear own costs.

MANDERINO, J., did not participate in the decision of this case.

NIX, J., concurs in the result.

**3.** Appellant claims insufficient evidence existed to prove he had evidenced a settled purpose to relinquish rights in C.A.W. However, we have held parental rights may be terminated under § 311(1) for *either* a settled purpose of relinquishing parental rights *or* for failure or refusal to perform parental duties. As the latter has been proven, we need not discuss appellant's arguments concerning the former.