487 Pa. 563 (1980)
410 A.2d 755
In re I.R.A., a minor.
In re PETITION FOR INVOLUNTARY RELINQUISHMENT OF PARENTAL RIGHTS AND DUTIES OF MOTHER TO AGENCY.
Appeal of A.A.B.
Supreme Court of Pennsylvania.
Argued October 16, 1979.
Decided February 1, 1980.
*564 William J. Scott, West Chester, for appellant.
E. Craig Kalemjian, Thomas P. Fay, West Chester, for appellee.
Before EAGEN, C.J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

OPINION
FLAHERTY, Justice.
This is an appeal from a decree of the Orphans' Court Division of the Court of Common Pleas of Chester County *565 which terminated involuntarily the parental rights of appellant to her natural daughter, I.R.A.[1]
I.R.A., born in 1967, is the youngest of appellant's seven children born out of wedlock, most of whom have been raised by persons other than appellant and with only several of which appellant maintained any contact. Shortly after I.R.A.'s birth, appellant and I.R.A. moved to the home of I.R.A.'s paternal aunt where they then resided for approximately eight months. Appellant's children can be traced to several different fathers but soon after I.R.A. was born appellant married the child's father and they moved away from the aunt's house, taking I.R.A. along with them.
Between 1968 and 1972 appellant experienced a number of personal problems including alcoholism, epilepsy, and attempted suicide. Her marriage deteriorated into a separation, and in September of 1970 she cut her husband with a knife after he misappropriated a welfare check. Appellant was then placed in a mental hospital and I.R.A. was again sent to live with I.R.A.'s aunt. While the child lived there, appellant visited the aunt and said she saw the child on only a few occasions. Between 1968 and 1972, appellant was hospitalized on five or six occasions in mental hospitals. I.R.A.'s residence with the aunt continued until August of 1973 when the aunt placed I.R.A. with the appellee agency, Chester County Children and Youth Service, which transferred the child to a foster home. This marked the start of nearly a four year period during which appellant had virtually no contact with I.R.A.
After August of 1973, appellant never sent letters, cards, or gifts to I.R.A. Nor was any attempt made to telephone or write to the appellee agency. Appellant is illiterate and said she did not know what address to write to but she was capable of using the telephone, of traveling, and in fact visited the agency on the two occasions hereafter described. She had a tutor for reading and writing lessons. This tutor, appellant said, would read or write letters for her if such were requested but appellant never asked to contact I.R.A. *566 Soon after I.R.A. went into custody of the appellee agency in 1973, appellant made an unannounced visit to the agency and asked to see her child but permission was denied on the ground that appellant was too emotionally upset at the time: she was told to leave until she calmed down but was not told to stay away permanently. Even appellant justified the agency's refusal of permission by admitting that she had such a bad temper at the time that it was reasonable not to have allowed her to see I.R.A. That single incident was appellant's sole excuse for the ensuing period of nearly four years during which no contacts with I.R.A. or the agency were even attempted. Appellant was not hospitalized during the period in question, her epilepsy was under control, and the record reveals no circumstances that could have prevented her from taking an affirmative role in I.R.A.'s life. Appellant maintained only the most remote awareness of the child's existence through the child's aunt who occasionally visited the agency, but the aunt was never asked to convey any wishes to the child. Nor did appellant volunteer to give the agency her own address.
In May of 1977, after hearing that a petition to terminate parental rights had been filed, appellant made her second visit to the agency. However, this visit resulted in a repeat of the events of the first visit. After leaving the agency on the second visit appellant calmed down but did not renew any effort to see I.R.A. Nothing occurred during either of the visits to justify appellant in believing that she would not be permitted to see I.R.A., were she to compose herself, or that it would be futile to return to the agency to express interest in the child. I.R.A., who was ten years old at the time of the orphans' court proceeding, testified that she did not recall ever even having seen her mother prior to the termination hearing.
Appellant's first contention is that the evidence was insufficient to justify termination of parental rights under the Adoption Act of 1970, P.L. 620, 1 P.S. § 311(1) (Supp. 1979). Where parental rights have been terminated in orphans' court, our scope of review is limited to determining *567 whether the decree was supported by competent evidence. In re William L., 477 Pa. 322, 383 A.2d 1228 (1978). Involuntary Termination of Parental Rights of S.C.B. and K.T., 474 Pa. 615, 379 A.2d 535 (1977). Performance of parental duties is an obligation resting affirmatively upon the parents. In re W.M. III, 482 Pa. 123, 393 A.2d 410 (1978). When a child has been placed in foster care, a parent has the affirmative duty to work towards the return of the child. In re William L., 477 Pa. 322, 383 A.2d 1228 (1978). We find that the record here discussed contains amply sufficient evidence on which the court below could have concluded that appellant, for a period in excess of six months, failed to use the resources available to her under the circumstances to fulfill her affirmative duties as a parent.[2]
Appellant's second contention is that the appellee agency had a duty to offer rehabilitative services prior to bringing termination proceedings. In In re W.M. III, 482 Pa. 123, 127-128, 393 A.2d 410, 412 (1978) we stated:
While it may be that a child care agency should offer education, training and encouragement to parents who evince an interest in keeping a family together by improving conditions in a home, we know of no legal obligation to that effect, and it is not reasonable to suggest that an agency must attempt to generate parental love and concern where there is a total absence of any manifestation of those sentiments. (Emphasis added)
Section 311 of the Adoption Act contains no express requirement that child care agencies offer rehabilitative services to parents. The focus of a termination proceeding is upon the conduct of parents. We see no basis for reading into Section 311 a legislative intent that offering rehabilitative services *568 to parents be a prerequisite to petitioning for termination. Appellant cites Title 4300, §§ 4302 and 4332, of the Department of Public Welfare Regulations as printed in the Children and Youth Manual and entitled "Foster Family Care Under Social Service Auspices" as requiring that assistance be offered to parents of children in foster care.[3] Notwithstanding, the burden is upon parents to meet their affirmative duties under Section 311: proof of rehabilitative aid having been offered is not a prerequisite to termination of parental rights under the statutory scheme.
Decree affirmed. Each party to pay own costs.
MANDERINO, J., did not participate in the decision of this case.
NIX, J., filed a dissenting opinion.
NIX, Justice, dissenting.
Today's majority opinion sets a frightening precedent and completely distorts the obligation of social agencies when they are confronted with distressing and pitiable circumstances as was the case here. They callously frame the issue as the misbehavior of the natural parent, although it is conceded that the natural parent was suffering from serious and persisting mental and emotional problems. In effect the majority has decreed that they can select a more fitting parent than God in His infinite wisdom was capable of doing.
This child was the legitimate offspring of the appellant and her husband. Nevertheless, the majority has taken great pains in stressing that the child's birth preceded the marriage of the parents and that the child had illegitimate siblings. Apparently proceeding from some unstated moral judgment, the majority began to justify its decision to sever the parental relationship. They cite appellant's erratic behavior as the basis for the conclusion that the parental rights should be terminated. They concede that the appellant's behavior was compelled by serious mental and emotional *569 problems. Yet they place no responsibility upon the state or related agencies to at least attempt to ferret out and address the underlying problems.
The record reflects that the appellant was one of the many unfortunates in this world. She was illiterate in addition to her other problems. Yet the majority, secure in their ivory towers and blessed by their better than average intellect and rich experience, find fault with appellant because she could not recognize the alternatives they were able to fashion. The only hope for this natural parent to meet the standard that the majority has seen fit to impose would have come through the aid of a social agency competent to provide such intensive training and counselling as was required under the circumstances. The majority respond by saying:
The focus of a termination proceeding is upon the conduct of parents. We see no basis for reading into Section 311 a legislative intent that offering rehabilitative services to parents be a prerequisite . . .
The arrogance of power is most offensive when it is employed to exploit the rights of the defenseless members of society.
I dissent.
NOTES
[1] In Re: I.R.A., 26 Ches.Co.Rep. 27 (1978).
[2] The court below found grounds for termination not only under Section 311(1), second clause, but also under Sections 311(1), first clause, and 311(2). We need not review the court's findings under the latter subsections since Section 311 contains alternative grounds for termination and we find ample evidence to uphold the termination under Section 311(1), second clause, which relates to failure to perform parental duties. Adoption Act of 1970, P.L. 620, 1 P.S. § 311 (Supp. 1979).
[3] Reissued October, 1969 (Replacing 12-66).