424 A.2d 1306

**In re Adoption of I. L. G.**

**Appeal of BEAVER COUNTY CHILDREN AND YOUTH SERVICES.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1980.

Decided Feb. 4, 1981.

508

J. Philip Colavincenzo, Reed, Luce, Good, Tosh, Kunselman & McGregor, Beaver, for appellant.

Albert J. Jones, Neighborhood Legal Services Association, Beaver Falls, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Beaver County Children and Youth Services appeals from a final decree of the Orphans' Court Division of the Court of Common Pleas of Beaver County denying its petition for involuntary termination of the parental rights of V.G., the natural mother of I.L.G. The orphans' court found that "the record clearly established that [V.G.] failed to perform her parental duties for a period of at least six months." See Adoption Act of 1970, Act of July 24, 1970, P.L. 620,

§ 311(1), 1 P.S. § 311(1) (Supp.1980).* According to the orphans' court findings, for nine months, despite repeated communications from Children and Youth Services, V.G. neither asserted nor evinced an interest in I.L.G. Despite its findings, supported by the record, that V.G. failed to perform parental duties for the statutory period, the court refused to terminate V.G.'s parental rights. It did so on the ground that Children and Youth Services failed to render rehabilitative services to V.G. "or at the very least inform [V.G.] of the possible consequences of her failure to perform her parental duties."

The findings of the orphans' court, supported by the record, may not be disturbed:

> "[I]n reviewing the decision of the orphans' court, [this Court's] task is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence."

*Cohen Will*, 445 Pa. 549, 550, 284 A.2d 754, 755 (1971). Accord, e. g., *Hamill Estate*, 487 Pa. 592, 410 A.2d 770 (1980); *In re C.A.W.*, 487 Pa. 163, 409 A.2d 16 (1979). Our inquiry here centers upon whether the orphans' court committed an error of law in refusing to terminate V.G.'s parental rights even though it found she failed to perform her parental duties for the requisite statutory period. It must be concluded that, based on the orphans' court's supported findings, the orphans' court erred in not terminating parental rights.

---

* Section 311(1) of the Adoption Act of 1970 provides that parental rights may be involuntarily terminated where

> "[t]he parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to the child, or has refused or failed to perform parental duties...."

This section permits termination of parental rights upon a showing of either the parent's settled purpose to relinquish parental claims to the child, or a refusal or failure to perform parental duties for six months. See *In re Adoption of McCray*, 460 Pa. 210, 215 n.6, 331 A.2d 652, 654 n.6 (1975).

The orphans' court's refusal to terminate parental rights on the basis of the claimed failure of Children and Youth Services to provide rehabilitative services to V.G. is contrary to the Adoption Act of 1970 and our case law. Quite recently, in *In re I.R.A.*, 487 Pa. 563, 410 A.2d 755 (1980), this Court rejected imposition of the very duty to provide rehabilitative services which the orphans' court here sought to impose:

"Section 311 of the Adoption Act contains no express requirement that child care agencies offer rehabilitative services to parents. The focus of a termination proceeding is upon the conduct of parents. We see no basis for reading into Section 311 a legislative intent that offering rehabilitative services to parents be a prerequisite to petitioning for termination. Appellant cites Title 4300, §§ 4302 and 4332, of the Department of Public Welfare Regulations as printed in the Children and Youth Manual and entitled 'Foster Family Care Under Social Service Auspices' as requiring that assistance be offered to parents of children in foster care. Notwithstanding, the burden is upon parents to meet their affirmative duties under Section 311: proof of rehabilitative aid having been offered is not a prerequisite to termination of parental rights under the statutory scheme."

487 Pa. at 567, 410 A.2d at 757 (footnote omitted). See also *In re W.M. III*, 482 Pa. 123, 127–28, 393 A.2d 410, 412 (1978). We hold here, as in *I.R.A.*, that "proof of rehabilitative aid having been offered is not a prerequisite to termination of parental rights under the statutory scheme."

So too, neither the Adoption Act of 1970 nor our case law permits a refusal to terminate parental rights because Children and Youth Services did not "inform [V.G.] of the possible consequences of her failure to perform her parental duties." Refusal to terminate on this ground reflects a misperception of the affirmative parental duties under the Adoption Act. As this Court has stated,

"A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a

merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. *In re Adoption of Orwick*, 464 Pa. 549, 347 A.2d 677 (1976); *In re Adoption of Mahlon Nichelle McCray*, 460 Pa. 210, 331 A.2d 652 (1975); *Appeal of Diane B.*, 456 Pa. 429, 321 A.2d 618 (1974); *In re Smith's Adoption*, 412 Pa. 501, 194 A.2d 919 (1963). This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. *In re Adoption of Mahlon Nichelle McCray*, supra; *Appeal of Diane B.*, supra; *In re Adoption of Jagodzinski*, 444 Pa. 511, 281 A.2d 868 (1971). Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.' *Appeal of Diane B.*, supra, 456 Pa. at 433, 321 A.2d at 620, quoting *In Re: Adoption of J.R.F.*, 27 Somerset L.J. 298, 304–05 (Pa.C.P.1972).

> \*    \*    \*    \*    \*    \*

[P]arental rights may not be preserved by 'waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities (while others adequately provide the child with [his or] her immediate and continuing physical and emotional needs).' *In re Smith's Adoption*, 412 Pa. at 505, 194 A.2d 922. Parental duty does not require the impossible but may encompass that which is difficult and demanding. A parent may not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. See *In re Adoption of Orwick*, supra; *In re Adoption of Mahlon Nichelle McCray*, supra; *In Re: Adoption of J.R.F.*, supra."

*In re Burns*, 474 Pa. 615, 624–25 & 626, 379 A.2d 535, 540 & 541 (1977). Our courts are without authority to engraft upon the Adoption Act a provision conditioning a parent's

obligation to perform affirmative parental duties only upon "warning" by a children services agency. This the Legislature did not do and we may not intrude into this exclusive province of legislative judgment. As Justice Holmes observed in *Missouri, Kansas and Texas Railway Company v. May*, 194 U.S. 267, 270, 24 S.Ct. 638, 639, 48 L.Ed. 971 (1904), "legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts." See *In re William L.*, 477 Pa. 322, 339, 383 A.2d 1228, 1236, cert. denied, 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978). See also *In re L.L.D.*, 492 Pa. 454, 424 A.2d 1278 (1980).

Decree reversed. Each party pay own costs.

NIX, J., files a dissenting opinion.

NIX, Justice, dissenting.

I cannot agree with the majority's statement that "proof of rehabilitative aid having been offered [by the Child and Youth Services] is not a prerequisite to termination of parental rights . . ." under Section 311 of the Adoption Act.[1] Many parents, such as V.G. in the instant case, are victims of inadequate education, minimal financial resources and lack the maturity to fully comprehend the requirements of parenthood. Under these circumstances the social agencies have an obligation to provide intensive training and counselling to insure that the extreme measure of involuntary termination of parental rights is not meted out to unfortunate and uninformed parents who otherwise have manifested a desire to preserve the parent-child relationship. *See, In re I.R.A.*, 487 Pa. 563, 567, 410 A.2d 755, 757 (1980) (Nix, J., dissenting).

The majority errs in concluding that a requirement of rehabilitative aid prior to involuntary termination of parental rights would constitute a judicial engraftment upon the Adoption Act. A legislative mandate to the social service agencies to provide rehabilitative services for parents in

1. Adoption Act of 1970, Act of July 24, 1970, P.L. 620, § 311(1), (Supp.1980–81).

order to preserve and stabilize family life is not foreign to this Commonwealth's attempt to protect children and maintain family relationships. *See* Child Protective Services Law, Act of November 26, 1975, P.L. 438, No. 124, § 2, 11 P.S. § 2202. (Supp. 1980–81). This Court stated in *In re: William L.,* 477 Pa. 322, 383 A.2d 1228 (1978) that statutes relating to state intervention in the parent-child relationship may be considered *in pari materia.*[2] 1 Pa. C.S.A. § 1932 (Supp.1980–81).

The legislature has clearly set forth a requirement of rehabilitative services prior to state intrusion into the parent-child relationship. Section 2216(d) of the Child Protective Services Act provides:

> (d) Each child protective service shall make available among its services for the prevention and treatment of child abuse multi-disciplinary teams, instruction in education for parenthood, protective and preventive social counseling, emergency caretaker services, emergency shelter care, emergency medical services, and the establishment of groups organized by former abusing parents to encourage self-reporting and self-treatment of present abusers. 11 P.S. § 2216(d) (Supp.1980–81).

In addition, Section 2213 requires the Department of Public Welfare to maintain a continuing program to provide rehabilitative services before state intervention into the family relationship.

> The department and each child protective service, both jointly and individually, shall conduct a continuing publicity and education program for the citizens of the Commonwealth aimed at the prevention of child abuse, the identification of abused children, and the provision of necessary ameliorative services to abused children and their families. In addition, *the department and each child protective service shall conduct an ongoing training and* education

2. *In re: William L., supra,* held that the Juvenile Act and Adoption Act may be considered *in pari materia* to the extent that they relate to state intervention in the parent-child relationship, 477 Pa. at 347, n.21, 383 A.2d at 1241, n.21.

program for local staff, persons required to report, and other appropriate persons *in order to familiarize such persons with* the reporting and investigative procedures for cases of suspected child abuse and *the rehabilitative services that are available to children and families.*

11 P.S. § 2213 (Supp.1980–81). (Emphasis added).

Furthermore, the Department of Public Welfare pursuant to the authority of Articles VII and IX of the Public Welfare Code, Act of June 13, 1967, P.L. 31, as amended, 62 P.S. § 101 *et seq.* has promulgated regulations that require social services agencies to provide the following services to natural parents before recommending adoption: counseling; legal services; education services; health related services; financial assistance; and housing services.[3]

In the instant case, I.L.G. was hospitalized on two occasions for suspected child abuse. The record does indicate that a caseworker had attempted on several occasions to assist V.G. in caring for her child. V.G. did stay in intermittent contact with the Agency, but lack of transportation was part of her problem in not visiting I.L.G.

However, the obligation of the social service agency to offer rehabilitative services to the child and natural parent must not be performed in a perfunctory manner. Rehabilitative services must meet the needs of the individual. Under the instant circumstances, the rehabilitative services offered were far below those services required under the Child Protective Services Act.

What the majority fails to recognize is that often the affirmative obligation to perform parental duties requires the assistance and direction of those same social services which may ultimately seek to terminate the fundamental parental rights of the disadvantaged. I would therefore affirm the order of the Orphans' Court Division of the Court of Common Pleas denying the petition of the Child and Youth Service.

3. Department of Public Welfare Regulations, § 2–1–28 (5 Pa. Bulletin 2199, August 23, 1975).