530 A.2d 908

In re **ADOPTION OF J.J.**

Appeal of James **PHILLIPS,** Natural Father.

James **PHILLIPS,** Appellant

v.

**CHILDREN AND YOUTH SERVICES OF DELAWARE COUNTY.**

Superior Court of Pennsylvania.

Argued Feb. 11, 1983.

Filed Sept. 1, 1987.

Carl Oxhold III, Philadelphia, for appellant.

Alfred J. Mattei, Media, for appellee (at 2793).

Before: CIRILLO, President Judge, and CAVANAUGH, WIEAND, POPOVICH, MONTGOMERY, HOFFMAN and CERCONE, JJ.

CIRILLO, President Judge:

This is an appeal from an order terminating a father's parental rights and from an order denying a petition for visitation rights.

Appellant, James Phillips, is the alleged father of J.J., born on December 19, 1979 to Marie J. On December 31, 1979, protective custody of J.J. was awarded to appellee Children and Youth Services of Delaware County ("CYS"), because Marie was involuntarily committed to Haverford State Hospital. Marie's parental rights were terminated on December 15, 1980 because of an incapacity to perform

parental duties. CYS filed a petition to terminate James parental rights on January 23, 1981 because the agency wished to place J.J. for adoption.

Appellant's rights were terminated pursuant to §§ 2511(a)(2) and (a)(5) of the Adoption Act following a hearing before the Honorable Francis J. Catania. At the hearing, it was established that J.J. had been in the custody of CYS since birth. James had never assumed any parental responsibility nor given or offered support for the child. In April of 1980, appellant questioned his paternity and said he wanted to take a fertility test to determine if he was truly the father. He wondered whether Marie's statements that she had been artificially inseminated by the Duponts or Jimmy Carter were true.

Peter Spengeman, the social worker assigned to the case, testified that prior to J.J.'s first birthday, appellant did visit the child but only in the company and at the insistence of Marie, the natural mother. During these visits, James never called the child by his name, never hugged him and often teased him in a cruel manner. Appellant also told Mr. Spengeman that he had no plans to take care of J.J. and had no interest in doing so or in accepting any services from CYS to remedy the situation.

James has also been admitted to Haverford State Hospital three times since 1979 for chronic schizophrenia. At the hearing, his doctor testified that if James failed to take his medication, his illness could become more active.

Based upon this record, Judge Catania found that the grounds for terminating James' parental rights were proven by the requisite standard of clear and convincing evidence. In a separate proceeding, James requested the right to visit J.J. pending appeal of the termination case. This petition was denied and James appealed both orders.

The superior court, per Judge Cavanaugh, reversed the hearing court (Cirillo, J. now P.J. dissenting). The superior court opinion stated that appellant raised four issues, only two of which were addressed by the court. The court stated: "appellant asks us to define the scope of appellate

review in termination of parental rights cases and derivatively, to consider whether the recent U.S. Supreme Court case of *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), mandates that our scope of review be broader than an abuse of discretion. Secondly, the appellant contends that the lower court erred in finding that appellee sustained the evidentiary burden of clear and convincing in its order that appellant's parental rights be terminated." *In Re Adoption of James J.*, 332 Pa.Super. 486, 488–89, 481 A.2d 892, 893 (1984), rev'd 511 Pa. 590, 515 A.2d 883 (1986). In a footnote the court stated that "[t]he issues not addressed in the opinion are: whether the agency-appellee failed to aid appellant in remedying his parenting difficulties; and, whether, if the evidence relied upon by the court below met the clear and convincing standard of proof, the statute, as applied to this case, was constitutional." *Id.*, 332 Pa.Superior Ct. at 488, 481 A.2d at 893. The court added that it was unnecessary to reach the latter two issues because it was reversing the decision of the hearing court. The court reversed because it did not find clear and convincing evidence in the record to support a termination of James' parental rights.

The Pennsylvania Supreme Court granted allocatur and reversed the Superior Court, reinstating the hearing court's original decision. *In Re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883 (1986). The court remanded the case to this court for disposition of the issues which were not reached on the first appeal. *Id.*, 511 Pa. at 609, 515 A.2d at 893. However, a review of the appellant's original brief demonstrates that only three issues were raised and they do not include two of the issues mentioned in the superior court opinion. The issues presented were: (1) whether the trial court erred by failing to grant James' motion for dismissal at the close of the agency's case; (2) whether CYS failed to prove by clear and convincing evidence that James' parental rights should be terminated; and (3) whether §§ 2511(a)(2) and (5) are unconstitutional as applied to James.

The supreme court disposed of the second issue, concerning the agency's burden of proof. Thus, we must determine the validity of the remaining two issues.

Appellant claims that the court should have granted his motion for dismissal at the close of the agency's case because the evidence was insufficient to support termination. This is a vacuous argument. The hearing court and our supreme court have each determined that CYS established by clear and convincing evidence that James' parental rights should be terminated. It would be illogical to the point of absurdity to find that CYS had met its burden of proof but their case should be dismissed. In effect, appellant has raised the same issue under separate headings and has attempted to camouflage this fact by placing his argument under two different captions.

Appellant's final argument is that the applicable sections of the Adoption Act are unconstitutional as applied to him. In *In Re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978), our supreme court held that the Act was not so vague as to be unconstitutional on its face. The Court recognized that a statute which is so vague as to be susceptible to arbitrary enforcement or which fails to provide adequate notice is an unconstitutional violation of due process. *Id.*, 477 Pa. at 330, 383 A.2d at 1231. However, the court held that the Adoption Act is not such a statute. *Id.*, 477 Pa. at 331–32, 383 A.2d at 1231.

The court' stated that vague statutes may offend the Constitution by "(1) trap[ping] the innocent by failing to give a person of ordinary intelligence reasonable opportunity to know what is prohibited so that he may act accordingly; [and] (2) they may result in arbitrary and discriminatory enforcement in the absence of explicit guidelines for their application...." *Id.* The court noted that the Adoption Act provides for the termination of parental rights based upon "repeated and continued incapacity [or] neglect." *See* 23 Pa.C.S. § 2511(a)(2). Though this language appears at first blush to be imprecise, the court held that the statute must be evaluated in light of the meaning which has

evolved via judicial interpretation. *William L.*, 477 Pa. at 332, 383 A.2d at 1232. Because our courts adhere to strict requirements of proof before terminating parental rights, the statute was not constitutionally suspect on its face. *Id.* *See Fabio v. Civil Service Comm. of Phila.*, 489 Pa. 309, 315, 414 A.2d 82, 85 (1980) (law which appears vague on its face may withstand a constitutional challenge if it has been narrowed by judicial interpretation, custom and usage).

Appellant claims that even if the statute is facially constitutional, it is unconstitutional as applied to him. He argues that the statute has been invoked in an arbitrary and discriminatory manner and that he did not receive fair notice that his behavior might cause the termination of his parental rights.

The statute specifies that parental rights may be terminated if the parent has failed to provide essential parental care because of incapacity or neglect and the parent cannot or will not remedy the problem. *See* 23 Pa.C.S. § 2511(a)(2).[1] James' behavior toward his child is the very epitome of neglect. His treatment of J.J. constitutes an unbroken litany of disdain and disinterest.

1. It is unclear from Judge Catania's Opinion whether § 2511(a)(2) or § 2511(a)(5) was the basis of the termination order. Section 2511(a)(2) provides:

   The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

   Section 2511(a)(5) provides:

   The child had been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

   Any claim that § 2511(a(5) is unconstitutional because it does not provide fair notice as to the acts which it prohibits is meritless. The section explicitly specifies the behavior which it proscribes.

As noted previously, James originally denied paternity and took very little interest in visiting, caring for, or supporting J.J. During his visits with the child James exhibited strange and cruel behavior. He teased J.J. by snapping his fingers in front of the boy's eyes and by dangling his bottle or a toy out of the child's reach while he cried. Appellant was unsympathetic when the child cried, responding by snapping his fingers in the baby's face.

James was uncooperative with Mr. Spengeman and consistently denied the social worker access to his home. He cursed him and hung up the phone on him on several occasions.

In addition to this evidence, James was consistently unemployed, suffered from chronic schizophrenia and had a history of drug use.

■ Certainly, any ordinary person should reasonably know that the total disregard exhibited by the above-cited acts constitutes neglect of parental duties. If James' behavior were even to approach the societal norm in child care the consequences would be nothing short of terrifying. Though the termination statute may be vague on its face, it certainly afforded James sufficient notice that his "style" of parental care was unacceptable.

James also claims that the termination of his rights is unconstitutional because the agency applied the statute in a discriminatory manner. He asserts that CYS pursued this case because of a personal disapproval and dislike of him and because the agency wished to place J.J. for adoption. It is often stated that the courts will not interfere with the acts of other governmental actors based on the motive behind those acts. *In re Appeal by Mark-Garner Assoc.*, 50 Pa.Cmwlth. 354, 359, 413 A.2d 1142, 1145 (1980). But there are exceptions to this general rule.

The selective and discriminatory application of a statute by an arm of the government is a violation of the fourteenth amendment. *Commonwealth v. Hernandez*, 339 Pa.Super. 32, 44, 488 A.2d 293, 299 (1985); *Commonwealth*

*v. Stauffer,* 309 Pa.Super. 176, 184, 454 A.2d 1140, 1145 (1982); *Commonwealth v. Phillips,* 248 Pa.Super. 400, 404, 375 A.2d 158, 160 (1977). *See also Commonwealth v. Ward,* 493 Pa. 115, 127, 425 A.2d 401, 408 (1981) (no constitutional violation where vindictiveness not proven).

■ The government must have intentionally invoked the statute for a reason unrelated to the legal matter at issue for a constitutional violation to be present. *Stauffer,* 309 Pa.Super at 184, 454 A.2d at 1145. The individual must establish that he has been purposefully singled out by the government for selective prosecution because of a governmental dislike unrelated to his alleged status as a law breaker. *Id.* However, the individual making such a claim bears the burden of proof. *Id.,* 309 Pa.Superior Ct. at 185, 454 A.2d at 1145.

■ James has failed to meet this burden. He has provided nothing more than bald and unsupported assertions that the agency was after him. Appellant claims that CYS did not approve of his "lifestyle". The hearing record indicates that the attorney for CYS questioned James about his working hours as a musician. This information was relevant as to the amount of time and care James would be able to provide J.J. James explained that though he must keep odd hours, he only works about eight hours a day. He stated that his mother would be able to care for the child during his absence from the home. The court must have been satisfied with this response because it did not cite James' working hours as a basis for its decision to terminate his parental rights.

James' counsel did imply that Mr. Spengeman falsified James' address on the agency petition to terminate because of his personal enmity for the appellant. The social worker incorrectly listed James' address as Haverford State Mental Hospital. However, as the hearing court noted, this may have been nothing more than an innocent clerical error. In any event, appellant failed to prove that CYS purposefully and wrongfully pursued him. As noted, it was James'

burden to prove this claim. Mere surmise, suggestion and implication are hardly sufficient to meet this burden.

James has also appealed from the denial of his petition for visitation rights pending appeal. In his brief, appellant recognized that this issue hinges on the outcome of his appeal of the termination order. Because we have upheld the termination, the request for visitation is moot.

■ We do not reach our decision in this case without much regret. The matters involved in this case are of the utmost importance and seriousness. A parent's right to raise his child is one of the most basic rights of western civilization. It is so much a part of our cultural tradition that our courts have enshrined it with constitutional protection despite its absence from the document's text. *See Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). However, it is also the duty of our courts to protect children from abuse and neglect. The judicial system is society's last line of defense against parental misconduct. Though we must respect the parent-child relationship, we cannot afford it total deference. A parent has the right to raise his child as he sees fit within the bounds of decency and reason. He does not have a license to abuse and neglect his helpless dependent.

Similarly, we take very seriously the claim that a statute is unconstitutional because it does not provide fair notice of its requirements or it has been invoked in a discriminatory manner. Our Constitution restricts the ways in which the government may deal with the citizenry out of a concern for fairness and as a protection against tyranny. It is fundamentally unfair for the government to treat one person differently from another person. If we are to remain a nation of laws and not men, the state must apply its power as even-handedly as possible. Otherwise, we have no protection from the selective use of police power against anyone who is disfavored by officialdom for any reason. Such unquestioned and unchecked power would chill our political freedoms with the raw force of an Arctic gale.

This same policy underlies the requirement that a statute must give fair notice of its provisions. Otherwise, the government could prosecute persons for statutory violations they had no way of realizing that they were committing. Our system was purposefully designed to prevent the government from acquiring such frightening power.

However, we are convinced that the governmental actions at issue in this case were constitutionally proper. Therefore, we affirm the orders of the Court of Common Pleas of Delaware County.

CAVANAUGH, WIEAND, MONTGOMERY, HOFFMAN and CERCONE, JJ., concur in result.