573 A.2d 612

**In re G.D.G.**

**Appeal of C.G.**

Superior Court of Pennsylvania.

Argued April 4, 1990.

Filed April 30, 1990.

Andrew F. Erba, Philadelphia, for appellant.

Angela P. Robinson, Asst. County Sol., Philadelphia, for Dept. of Human Services, participating party.

Melissa Stemmel, Asst. Public Defender, for Child Advocate, participating party.

Before McEWEN, MONTEMURO and KELLY, JJ.

MONTEMURO, Judge.

This is an appeal from an order terminating appellant's parental rights to her twelve year old daughter.

The child, G.D.G., who was born out of wedlock in December of 1977, was six months old when she was abandoned by appellant in a bar. Since that time she has been in the custody of the Department of Human Services (DHS), having been placed in an adoptive foster home. Appellant had no contact with the child between 1979, and 1981 when visitation was attempted; at the first confrontation the child reacted so adversely that the visits were suspended and contact between appellant and her daughter was not resumed until 1985. At that time, supervised meetings between G.D.G. and appellant were observed by a child psychologist with a view to establishing a visitation plan. However, it was concluded as a result of these observations made over the course of a year that reunification of mother and child was not appropriate, and termination was recommended. A hearing was held upon a petition filed by DHS, resulting in the order now before us on appeal.

Preliminarily, we note that when addressing the propriety of a termination order we are limited to a determination of whether the decision to terminate was supported by competent evidence. Absent some indication that the trial court abused its discretion, based its conclusions on an error of law, or lacked sufficient, that is, clear and convincing evidence, the order must stand. *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883 (1986), on remand 366 Pa.Super. 94, 530 A.2d 908 (1987); *In re J.G.J., Jr.*, 367 Pa.Super. 425, 532 A.2d 1218 (1987); *Lookabill v. Moreland*, 336 Pa.Super. 520, 485 A.2d 1204 (1984).

Unrebutted hearing testimony revealed that appellant is so profoundly limited in intellectual function that there is serious doubt she can ever acquire the parenting skills necessary to justify reuniting her with G.D.G. Although appellant, who did not give evidence, attends a sheltered

workshop and receives counselling provided by the Mental Health/Mental Retardation system, she cannot handle money, take public transportation unescorted, or indeed function independently at any level. Appellant has never been to school and is totally illiterate. Since 1979 she has resided with an older man who found her living on the street and took her in.

At the visitation sessions with her daughter, appellant exhibited little or no parenting skill, a situation which has not demonstrably improved. She is unable to interact with the child, preferring to engage in parallel play rather then any activity immediately involving G.D.G., and what little verbal communication has occurred is inappropriate. During each visit, appellant required as much if not more supervision than her daughter, and would constantly seek assistance from other adults in dealing with G.D.G., who was made anxious and uneasy by her mother's presence and incapacity. The child has been tested as within the mid-borderline range of intellectual ability, and is very fragile emotionally.

The statutory section under which appellant's parental rights were terminated reads in pertinent part as follows:

23 Pa. C.S.A. § 2511.

(a) **General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy the conditions which led to the removal or

placement of the child within a reasonable period of time, and termination of the parental rights would best serve the needs and welfare of the child.

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

■ Appellant has presented us with three issues,[1] all of which, in effect, argue that DHS failed to meet its burden of proof that her rights as a parent should be terminated. Specifically, she contends that no clear and convincing evidence, necessary as a predicate to termination of parental rights, was provided because DHS, having failed to introduce competent medical evidence of her retardation, therefore failed as well to demonstrate an irremediable condition of incapacity on her part. As a corollary to this thesis, appellant argues that because the Department itself failed to fulfill its responsibility by providing her with services directed at improving her parenting ability, the showing necessary for termination not only has not, but cannot be made. Both of these theories rest on the basic assumption that the trial court relied principally upon appellant's intellectual limitations in terminating her parental rights. In arguing the impropriety of such an action, appellant refers us to the recent case of *In re: P.A.B.; M.E.B.; M.A.B.*, 391 Pa.Super. 79, 570 A.2d 522 (1990). There a panel of this court held that the parental rights of a mentally disabled couple to their three children could not be terminated simply because of their disabilities. The factor found to be most critical was that termination would sever the familial bond which had been established. As we said in *P.A.B.*,

The Parents raised the three children for six, four and two years respectively, until CYS found it necessary to

---

1. Appellant's Statement of Questions Presented corresponds in only the most general way to her argument. We will therefore address the points raised in the latter.

remove them from the home. Since removal, the Parents have maintained a visitation schedule and have participated in parenting classes. While CYS presented extensive testimony that the Parents had difficulty with such functions as shopping, dressing the children, administering medications and controlling the children's behavior, *none of this testimony negated the existence and quality of the emotional parent-child bond.* Several of the social workers testified that the Parents obviously loved their children.

*Id.* at ——, 570 A.2d at 527 (emphasis added).

Herein no such long term contact existed—G.D.G., now eleven, has been away from appellant since the age of six months. So far from there being a bond, the child is uncomfortable, unhappy, and nervous in her mother's presence. We also noted in *P.A.B.* that nothing was offered to replace the relationship which had been forged with the Parents. Here G.D.G. has been in an adoptive foster home since 1979, and indeed a bond would be broken were she removed from there. The bond, however, is not with appellant.

Moreover, despite appellant's argument that the result in this case has a purely theoretical basis grounded in speculation as to the degree of her retardation, the trial court stated that it terminated parental rights based on appellant's documented failure to perform affirmative parental duties rather than any abstract notion of her incapacity. The court notes appellant's consistent disinclination to establish a rapport with her daughter when opportunities for doing so were afforded her, and, as well, the absence of any desire to become a caring and devoted parent. The effect of appellant's short attention span, and her inability to control even the simplest situation, resulted only in G.D.G.'s anxiety and negative behavior. All of these conditions were testified to by witnesses who observed appellant's visits with the child, and whose veracity was accepted by the court, the sole judge of credibility. *In re Adoption of J.J.*, *supra.* The absence of medical evidence quantifying appel-

lant's intellectual limitations was therefore not critical to the result.

■ Appellant next argues that because there was uncontroverted evidence of improvement in appellant's condition, DHS failed to meet its statutorily established burden of proof. The improvement referred to was characterized by the child psychologist observing appellant's actions as "problematic" (N.T. 30). There was no definitive betterment of appellant's interaction with G.D.G., which continued, by and large, to be discordant, disruptive, and anxiety producing for the child. Although occasional gestures of appellant's were described as "sweet" or "loving" or "maternal" (N.T. 30), they were neither age-appropriate nor consistent, and appellant's tendency during the visitation sessions was to avoid any joint activity with G.D.G. The clear and convincing proof of appellant's failure to function as a parent is not disturbed by any exhibition of equivocal improvement in her performance.

Appellant argues, somewhat disingenuously, that the conditions which made necessary the original foster placement have now been remedied, making the termination improper. This is arrant nonsense as the trial court's decision was based upon appellant's course of conduct, not her place of abode. Moreover, after twelve years during which appellant neither cared for nor supported G.D.G., her living situation, itself unaltered since 1979, becomes nearly irrelevant. Appellant has made no argument that she is competent to care for her child at home; her contention merely centers around continuation of the child's current foster placement, and presumably, visitation. She has made no showing that the status quo is so compelling that it should be maintained.

In determining whether parental rights should be terminated, the court must recognize the essential needs of the child as well as the rights of the parent.

*Id.* at 605, 515 A.2d 891 (citations omitted).

Herein, appellant has never met the needs of her child, irrespective of her capacity or lack thereof to do so. The

statement that DHS bears responsibility for this failure overlooks first, the lack of any legal obligation of the agency to guarantee appellant's progress, *see, In re Adoption of I.L.G.*, 492 Pa. 507, 424 A.2d 1306 (1981); *In re W.M., III*, 482 Pa. 123, 393 A.2d 410 (1978), and second, the requirement of some effort on the parent's part to overcome any obstacles to effective performance. As an example, appellant did not attend any visits with her daughter between December, 1985 and May, 1986, since she was unable to travel without her companion, who was ill during this period. *Compare, P.A.B., supra,* wherein mentally limited parents met a bimonthly visitation schedule despite the lack of public transportation from their home in a rural area. *See also, In re Burns,* 474 Pa. 615, 379 A.2d 535 (1977).

■ Finally appellant charges that the trial court erred because it shifted the burden to her to prove that she did have parenting skills. This theory is premised on the insistence that the unsatisfactory nature of the visitation sessions was due not to appellant's deficiencies but to the child's emotional problems. Further, it is argued that because there was no expert testimony as to appellant's inadequate performance on these occasions, there was no competent assessment of her efforts. Appellant asserts that DHS has proven only G.D.G.'s removal from her care for more than six months, and concludes that because the child's needs are being met in foster care, termination should not be ordered.

Appellant's argument is, in fact, that she should retain the status of "parent", without performing any role whatever in her child's life, while someone else fulfills her parental responsibilities. We find that the statute does not contemplate such an arrangement.

Order affirmed.