J-S03033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: RICHARD J. DUFFIN | : | IN THE SUPERIOR COURT OF |
| VARIABLE TRUST AGREEMENT | : | PENNSYLVANIA |
| DATED AUGUST 9, 1993  TRUST FBO | : | |
| MARTHA J. DUFFIN EXEMPT | : | |
| | : | |
| | : | |
| APPEAL OF: MARTHA J. DUFFIN | : | |
| | : | |
| | : | No. 1083 WDA 2019 |

Appeal from the Order Entered June 20, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. 5237 of 1997

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED FEBRUARY 28, 2020**

Martha J. Duffin (the Beneficiary) appeals, *pro se*, the order of the Court

of Common Pleas of Allegheny County, Orphans' Court Division (the trial

court), determining that title to 20 acres of real property located at 6519 146th

Avenue, Holland, Michigan 49423 (the Property) is held solely by PNC Bank,

National Association (PNC), in its capacity as the lone trustee of "the Martha

J. Duffin Trust."  The Beneficiary also challenges the portion of the subject

order authorizing the Property's sale.  We affirm.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The facts are taken from the certified record, including the trial court's
findings, and the transcripts of the hearing held on June 3, 2019.  **See** Trial
Court Opinion and Order, 6/20/2019, at 1-3.

**I.**

Richard J. Duffin was the father of the Beneficiary and Virginia M. Duffin. Upon his death in 1996, the Beneficiary and her sister each received from their father one-half shares, held in trust, of the principal of "the Richard J. Duffin Variable Trust Agreement, dated August 9, 1993" (the Trust Agreement). "The Martha J. Duffin Trust" provided for the Beneficiary, and "the Virginia M. Duffin Trust" provided for her sister. PNC served as the trustee of both trusts.

The Trust Agreement directs that if either sister predeceases the other while both sisters are childless, then the assets of the deceased sister's trust must pass to the trust of the surviving sister. However, the Trust Agreement gives both sisters the power of appointment as to the principal of their respective trusts. That is, they each received a restricted right to determine how the assets of their trusts would be distributed. Importantly, the sisters could only exercise this power of appointment "by specific reference to this provision [of the Trust Agreement] in her Will."[2]

_____

[2] Article II, subsection C.2.b. of the Trust Agreement states:

> Upon the death of any daughter of the Grantor or upon the division into shares . . . **in the case of a daughter who is not then living, the principal of said daughter's share shall be distributed outright** to or on further trust for such one or more of the Grantor's descendants **as the Grantor's said daughter directs by specific reference to this provision in her Will**[.]

(Emphasis added).

In 1997, the sisters' respective trusts each acquired as principal equal half shares of the Property. Article IV of the Trust Agreement gives the trustee, PNC, "sole and absolute discretion, which shall be conclusive and binding on all persons," to "lease, sell, or otherwise dispose of" real property if it is determined to be "in the best interests of the Trust." However, the trial court entered a decree on May 8, 2000, ordering PNC to retain and manage the Property for the benefit of the trusts until further order of court. The decree prohibited PNC from selling the Property without prior court authorization.

Virginia M. Duffin died in 2015, and upon her death, the Beneficiary presented PNC with 19 handwritten pages that she claimed were her sister's last will and testament. The Beneficiary contended that the will compelled PNC to distribute to her an outright ownership interest in the one-half share of the Property owned by her deceased sister's trust. PNC declined, concluding that the writings were not a valid will, and that sole legal title to the Property passed to the Trust by operation of the default provisions in the Trust Agreement.

On February 20, 2019, PNC filed with the trial court a "Petition for Citation to Show Cause Why Declaratory Judgment Should Not be Entered to Confirm the Trustee's Interest in the Trust Real Estate and to Authorize its Sale." Specifically, PNC sought determinations as to whether the Beneficiary's deceased sister had left a valid will and, if so, whether the power of

appointment as to the Property was exercised. PNC's petition was granted, and a citation was awarded on February 25, 2019, directing the Beneficiary to respond.

The trial court held an evidentiary hearing concerning PNC's interests in the Property and heard from two witnesses. The Beneficiary testified on her own behalf. *See* Transcript of Hearing, 5/3/2019, at 28-48. The Director and Vice-President of PNC Bank Trust Real Estate Services, James Wilharm (Wilharm), testified on behalf of PNC, the sole trustee of the Trust. *See id*. at 7-24.

The Beneficiary described the contents of her sister's purported will, explaining that it was compiled from scattered writings on her deceased sister's desk. The Beneficiary herself then numbered the pages as she thought her sister would have wanted based on their earlier discussions. Many of the pages were heavily edited with corrections, notations and other extraneous markings. Some pages were entirely crossed out.

Notably, the first page was signed by Virginia M. Duffin on December 10, 1997, and witnessed by the Beneficiary on that same date. It appears to instruct that the Beneficiary should receive the tax-exempt proceeds of her sister's trust[3] upon her death:

---

[3] The Property at issue here appears to fall into the "tax exempt" portion of the assets of the Virginia M. Duffin Trust.

> I, Virginia Mae Duffin, will the tax exempt portion of the Richard J. Duffin Trust to my sister, Martha J. Duffin.
>
> I leave the taxable portion of that Trust to be distributed according to the provisions of my will. If there is no such will at the time of my death, I leave this portion to my sister Martha to distribute to family members . . . according to her understanding of my wishes.

The Beneficiary argued that the first page from 1997 is an original will, and that more recent pages, dating from 2001 to 2011, are codicils that did not negate her sister's stated intent to leave her a share of the trust Property. Yet, the Beneficiary admitted that her sister had not yet finalized her will/codicils before her death, and the Beneficiary conceded that she had not admitted any portion of the collected papers to probate. Moreover, it is undisputed that nothing in the 19 pages of Virginia M. Duffin's writings specifically refers to the Trust Agreement's provision outlining the power of appointment.

As to the condition of the Property and the Trust's request to sell it, Wilharm testified that it contains three structures (a small residence, a one-car garage and a shed), all of which are in poor states of repair. In fact, years ago, the garage roof caved in on a parked car owned by the Beneficiary and the car had since not been moved. The Property is vacant and has been unoccupied for about 20 years.

According to Wilharm, the current total value of the Trust is approximately $1,100,000, and of that total, the Property has a value of roughly $210,000, none of which is attributable to the structures. The yearly

cost of maintaining the Property is about $5,500. Wilharm testified that those maintenance costs are a drain on the Trust's resources, that the Property's value is stagnant, and that selling the Property would be in the best interest of the Trust.

The Beneficiary responded that she has not been to the Property since 2000, but she explained that this absence was caused by circumstances beyond her control, such as limited finances and ailing health. The Beneficiary stated that she intended to return to the Property to restore it for the benefit of future generations of her family and philanthropic enterprises. She emphasized that the Property has enormous sentimental value as her family's ancestral home.

In the order now on review, the trial court resolved all issues in PNC's favor. *See* Trial Court Opinion and Order, 6/20/2019, at 4-5. The trial court found that the writings offered by the Beneficiary did not constitute a valid will of her sister, Virginia M. Duffin, and that the power of appointment was not exercised. *Id*. The trial court ruled that PNC held sole legal title to the Property, and that PNC presented credible evidence that selling it would be in the best interests of the Trust, warranting authorization of its sale. *Id*. The earlier decree prohibiting the Property's sale was vacated. *Id*. The Beneficiary timely appealed and filed a 1925(b) statement of errors as directed by the trial court.

The Beneficiary's 1925(b) statement is, for the most part, a scattershot summary of facts, making it difficult to identify the precise legal claims the Beneficiary intended to raise on appeal. *See* 1925(b) Statement, 8/14/2019, at 1-4. It is apparent, though, that she disputed the trial court's rulings on the validity of her sister's will, PNC's sole ownership of the Property, and PNC's authorization to sell the Property. *See id*. The Beneficiary also argued for the first time that PNC, through its conduct with respect to the Property, breached its fiduciary duties as trustee. *See id*.

In its 1925(a) opinion, the trial court incorporated its earlier factual findings and conclusions of law. *See* 1925(a) Opinion, 8/26/2019 (attaching Trial Court Order and Opinion, 6/20/2019). The trial court also found that the Beneficiary's 1925(b) statement did "not allege any legal errors," but rather expressed disagreement "with the [factual] findings of the Court as set forth in the attached [Order and Opinion]". *Id*.

The Beneficiary filed a revised 1925(b) statement on October 24, 2019. *See* Revised 1925(b) Statement, 10/24/2019, at 1-6. In it, the Beneficiary stated numerous new facts, authorities and arguments that were never addressed in the prior proceedings.

Excluding the grounds asserted for the first time on appeal, the Beneficiary's appellate brief raises three main issues, which we rephrase as follows:

(a) Whether the trial court erred in ruling that the purported will of Virginia M. Duffin is invalid;

(b)   Whether the trial court erred in ruling that the power of appointment as to the Property was not exercised; and

(c)   Whether the trial court erred in authorizing the Property's sale.

***See*** Appellant's Brief, at 5.

## II.

## A.

The trial court did not err in ruling that PNC, as trustee of the Trust, holds sole legal title to the Property.[4]   The Trust Agreement permitted a beneficiary to exercise the power of appointment as to Trust assets only "by specific reference to this provision [of the Trust Agreement] in her Will."  The

---

[4] The applicable standard of review as to all issues in this case is whether the trial court abused its discretion:

> "In reviewing the decision of the orphans' court, this Court's responsibility is to assure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence." ***In re Klein's Estate***, 378 A.2d 1182, 1187 (Pa. 1977). "In determining whether the findings of the orphans' court are supported by competent evidence, we must take as true all the evidence supporting the findings and all reasonable inferences therefrom." ***In re William L.***, 383 A.2d 1228, 1237 n.12 (Pa. 1978). "Further, all conflicts in testimony must be resolved by the hearing judge, who is the sole arbitrator of credibility." ***In re C.A.W.***, 409 A.2d 16, 18 (Pa. 1979). "Findings of the orphans' court supported by evidence of record are entitled to the same weight given a jury verdict and must be sustained unless the court abused its discretion or committed an error of law." ***William L.***, 383 A.2d at 1237.

***In re Estate of Plance***, 175 A.3d 249, 259–60 (Pa. 2017) (some citations omitted).

writings which the Beneficiary asserts to be her deceased sister's will contained no such reference. So even assuming the will is valid, the Beneficiary's sister failed to exercise the power of appointment in accordance with the Trust Agreement, and the Beneficiary is not entitled to an outright ownership share of the Property due to that defect alone.

In similar cases, where a grantor has conditioned a power of appointment as to trust assets, courts have found that the conditions must be satisfied in order for that power to be exercised:

> [T]he law has been clearly settled that strict and literal compliance with the terms of a special power of appointment is absolutely necessary for its valid and effective exercise. That means that the appointing instrument must specifically refer in the instant case to the power which was granted by (the donor's) will and which (the donee) seeks to exercise and execute. A general residuary clause, even if and when it included the words, 'I hereby exercise every power of appointment which I possess,' would not and does not comply with and fulfill the donor's condition and is not a valid exercise of the special power of appointment granted to (the donee).

*Schede's Estate*, 231 A.2d 135, 137 (Pa. 1967).

Despite the above requirement of "strict and literal compliance", the recipient of a power of appointment does not have to use "magic words" in order to exercise it. If a grantor conditions the exercise of that power as to trust assets, it is enough to achieve "a reasonable substantive compliance with [the grantor's] expressed intention that [the beneficiary] identify his grant of power to her by her deliberate act." *In re Passmore*, 416 A.2d 991, 994 (Pa. 1980) (holding that requiring verbatim recital of trust language would

frustrate donor's intent, and finding that power was effectively exercised through an express intention to exercise it).

In this case, the putative will of the Beneficiary's sister did not at all identify the grant of power needed to confer an ownership interest in a Trust asset. The terms of the Trust Agreement imposed that requirement to make an appointment valid, and under the above cases, Pennsylvania law recognizes the condition as legally enforceable. Thus, because the power of appointment was not exercised, the Trust Agreement precludes the Beneficiary from receiving an outright ownership share in the Property, and under the default terms of the Trust Agreement, PNC, as trustee, must receive full legal title.

**B.**

Next, we find that the trial court did not err in authorizing PNC to sell the Property or in finding that its sale is in the best interests of the Trust. The gist of the Beneficiary's argument seems to be that the trial court did not properly weigh her testimony about the sentimental value the Property has to her family. She argues that the trial court should have discounted PNC's evidence that selling the Property would be in the Trust's best interests.

The terms of the Trust Agreement give PNC "sole and absolute discretion" over the management of assets, including real property. It was the grantor's prerogative to give a trustee such discretion and to deprive the beneficiaries of any say about such matters. *See e.g.*, *In re Holbrook's*

**Estate**, 62 A. 368 (Pa. 1905) ("[A] donor, not under any obligation to give, may give with such conditions as he [or she] pleases, subject only to the restriction that the conditions shall be clearly illegal."). As long as it performs in accordance with its fiduciary duties as trustee,[5] PNC may buy or sell real property on behalf of the Trust as it sees fit.

To the extent that the trial court heard conflicting testimony as to the financial or sentimental value of the Property and could block a sale on that basis, it was the trial court's job to resolve the conflict by weighing the evidence. The trial court credited PNC's evidence concerning the Property's worth vis-à-vis the interests of the Trust, and, on appeal, the findings of the trial court must be taken as true. Thus, the trial court did not err and its rulings as to the Property's sale must stand.

Order affirmed.

---

[5] The Beneficiary did not assert that PNC breached any of its fiduciary duties until after the appeal had begun, making such claims untimely. Those claims are waived and this Court cannot consider their merits. **See** Pa.R.A.P. 1925(b)(3)(iv) ("[A]ny issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived."). Further, even if the Beneficiary's fiduciary duty claims could be considered timely, they were still waived because the form of her revised 1925(b) statement clearly does not comport with the procedural rules. **See** Pa.R.A.P. 1925(b)(4)(iv) ("The Statement should not be redundant or provide lengthy explanations as to any error."); **see also** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/28/2020</u>